THE PEOPLE ex rel. WILLIAM J. CRAMMOND, Respondent, *v.* THE COMMON · COUNCIL AND CHAMBERLAIN OF THE CITY OF ROME, Appellant.

Under the act of 1887, making "provision for the relief of indigent soldiers," etc. (Chap. 706, Laws of 1887, as amended by chap. 261, Laws of 1888), the power to determine who are the indigent persons and families, the necessity for their relief, the measure thereof, the place where and the circumstances under which the same shall be administered, is not vested exclusively in a relief committee of a Grand Army post, but the proper officers of the town, city or county, having jurisdiction to raise and appropriate money for the relief of the poor, have jurisdiction and control over the same, and may determine the amount of money necessary.

The Grand Army post may apply to the auditing board of the municipality for such sum of money as it deems necessary for the purposes of the act, and that board must exercise its judgment and discretion as to the amount to be appropriated; where it has so done its determination is final and not subject to review by any court. (MAYNARD, J., dissenting.)

The Grand Army post of the city of Rome filed a written notice with the city chamberlain, signed by the proper officers, in which they estimated $1,000 to be a sufficient sum for the support in that city of the indigent

persons named in the act for a year, and requested that sum to be appropriated. The common council made investigations and acted upon the request, appropriating $500. About three months thereafter the post applied for a further appropriation of $500, stating that sum to be necessary, and that the former appropriation was exhausted. The common council acted upon it and appropriated $220. The post thereafter made another application for an appropriation of $280, which the common council refused. *Held* (MAYNARD, J., dissenting), that a writ of mandamus directing the common council to make the appropriation was improperly granted.

(Argued December 12, 1892; decided January 17, 1893.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made the second Tuesday of September, 1892, which affirmed an order of Special Term granting a peremptory writ of mandamus requiring the defendants, as auditing board of the city of Rome, to pay to the officers of Skillin Post of the Grand Army of the Republic of the city of Rome, N. Y., $280, to be expended by them for the relief of indigent soldiers, sailors and marines, and to accept and pay certain orders in addition thereto issued theretofore by the officials of said post for the relief of said veterans.

The facts, so far as material, are stated in the opinion.

*Charles Carmichael* and *A. D. Kneeland* for appellant. Under the Revised Statutes the duty and power to estimate the amount of public money necessary to be appropriated and expended for the support of all classes of the poor was given to the civil authorities of the town, city or county before the enactment of the statutes of 1887 and 1888. (Laws of 1845, chap. 334, § 7; 2 R. S. 2263, §§ 39, 44.) In the city of Rome the power was given to the common council to estimate and audit the expenses for the poor. (Charter of Rome, 26.) And the enactment of the special statute of 1887 and 1888 did not repeal the provisions of the former statutes in this particular either expressly or by implication. (*People ex rel. v. Palmer*, 52 N. Y. 83.) The order from which the appeal is taken is founded upon the erroneous assumption that the

common council violated the law in refusing to pay the amount
demanded ($280), and to accept the estimates of the com-
mander, quartermaster and relief committee of the post, as to
the amount which should be appropriated, used and paid out
by them for support, at some future time, during the year
ending October 31, 1891. (14 Hun, 226.) The county of
Oneida is one of the counties of the state wherein the poor are
a county charge within the meaning of section 1 of the statute.
(Laws of 1888, chap. 261, § 1; Laws of 1870, chap. 25, § 3.)

*D. F. Searle* for respondent. The common council was
the proper auditing board and had power to provide the fund.
(Laws of 1870, chap. 25, §§ 1, 7, 8, 13, 14.) The poor of the
city of Rome are not a county charge. (*People ex rel. v. Bd.
Assess.*, 52 How. Pr. 100; *Dolz* v. *A. Co.*, 3 Civ. Pro. Rep.
160; *Cribben* v. *Schillinger*, 30 Hun, 248; *Bennett* v.
*Edwards*, 27 id. 352; *Hill* v. *Bomd*, 22 How. Pr. 272;
*Yates* v. *North*, 44 N. Y. 274; *McCulloch* v. *Aeby*, 31 N. Y.
S. R. 125; *Crownz* v. *Vale*, 21 id. 208; Laws of 1888, chap.
262, § 2, 3.) The common council is in duty bound to pro-
vide the necessary sums to be drawn upon, and whatever sum
or sums is necessary must be provided. (*People ex rel.
Seymour* v. *Roche, Compt., etc., of the City of Troy*, unre-
ported.) The statute is constitutional. (N. Y. Const. art. 8,
§ 11; *People ex rel.* v. *Dayton*, 55 N. Y. 367; *People* v.
*Budd*, 117 id. 1; *People* v. *Draper*, 15 id. 532; *Ex parte
McCullom*, 1 Cow. 550.)

EARL, J. Chapter 706 of the Laws of 1887, as amended
by chapter 261 of the Laws of 1888, makes provision "for
the relief of indigent soldiers, sailors and marines, and the
families of those deceased." Section 1 provides that, "for
the relief of indigent and suffering soldiers, sailors and
marines, who served in the war of the rebellion, and their
families, or the families of those deceased, who need assist-
ance in any city or town in this state, the proper auditing
board of such city or town, or in those counties where the

poor are a county charge, the superintendent, if but one, or superintendents of the poor, as said auditing board in those counties, shall provide such sum or sums of money as may be necessary, to be drawn upon by the commander and quartermaster of any post of the Grand Army of the Republic in said city or town, upon the recommendation of the relief committee of said post, in the same manner as is now provided by law for the relief of the poor, provided said soldier, sailor and marine, or the families of those deceased, are and have been resident of the state for one year or more, and the orders of said commander and quartermaster shall be the proper vouchers for the expenditure of said sum or sums of money." Section 2 provides that " in case there shall be no post of the Grand Army of the Republic in any town in which it is necessary that such relief as provided for in section 1 shall be granted, the town board of said town or the superintendent or superintendents of the poor shall accept and pay the orders drawn, as hereinbefore provided, by the commander and quartermaster of any post of the Grand Army of the Republic, located in the nearest city or town, upon the recommendation of a relief committee, who shall be residents of the said town in which the relief may be furnished." Section 3 provides that " the commander of any post of the Grand Army of the Republic which shall undertake the relief of indigent veterans and their families, as hereinbefore provided, before the acts of said commander and quartermaster may become operative in any city or town, shall file with the city clerk of such city, or town clerk of such town, or the superintendent or superintendents of the poor of such county, a notice that said post intends to undertake such relief as is provided by this act. Such notice shall contain the names of the relief committee of said post in such city or town, and of the commander and other officers of said post. And the commander of said post shall annually thereafter, during the month of October, file a similar notice with said city or town clerk, or the superintendent or superintendents, and also a detailed statement of the amount of relief furnished during the preceding year, with

the names of all persons to whom such relief shall have been furnished, together with a brief statement in each case from the relief committee, upon whose recommendation the orders were drawn." Section 4 provides that "the auditing board of any city or town, or the superintendent or superintendents of the poor of those counties where the poor are a county charge, may require of the said commander or quartermaster of any post of the Grand Army of the Republic undertaking such relief in said city or town, a bond with sufficient and satisfactory sureties for the faithful and honest discharge of their duties under this act." Section 5 provides "that superintendents and overseers of the poor are hereby prohibited from sending indigent soldiers, sailors and marines (or their families or the families of those deceased) to any almshouse or orphan asylum without the full concurrence and consent of the commander and relief committee of the post of the Grand Army of the Republic having jurisdiction as provided in sections one and two."

We are called upon to construe some of the provisions of this act. It is the contention of the plaintiff that the relief committee of a Grand Army post may absolutely determine under the act who are the persons and families who are indigent and suffering, the necessity for their relief, the measure thereof, the place where and the circumstances under which the same shall be administered, and that the proper officers of any town, city or county having jurisdiction to raise and appropriate money for the relief of the poor can have no control or supervision over them. The committee and officers of a Grand Army post are not public officers and do not act under the sanction of any official oath, and are under no obligations or responsibility to the public It is true that the commander or quartermaster is required to give a bond for the faithful and honest discharge of his duties. But the bond reaches only to the application of the money to the relief of the persons and families designated in the act upon the recommendation of the relief committee. The persons relieved may belong to the army post, and in a measure control the appointment of the relief

committee, and thus the public money appropriated may be used by the post for the relief of its own members subject to no practical control whatever.     It is not needful that the persons to be relieved shall be paupers; but they may be relieved, if within any meaning of the terms the relief committee can determine that they are indigent and suffering.     The persons to be relieved are required only to be residents of the state for one year or more, and they may not have resided in the town, city or county for such a length of time, as under the general laws in relation to the poor, would make them chargeable thereon.     The Grand Army post need not be incorporated. It may be a mere voluntary association of individuals, and it is not required to submit the items of its disbursements under the act to any official board for audit.

Such an extraordinary statute which thus places the public money at the uncontrolled disposal of irresponsible persons not chosen by the people or appointed by any public body, or under the control of any public officer, should, so far as possible, be limited in its operation and scope, and public policy requires that it should be strictly and narrowly construed.     I am not disparaging Grand Army posts, but simply speaking of their legal status and the course of action they can pursue under the law without accountability to any one.

Under section one the common council was bound to provide such sum of money as was necessary for the relief of the persons and families named in the section. Somebody was to judge of the amount of money that was necessary.     Who was to judge?     Clearly, the common council.     The Grand Army post may apply to the auditing board for the appropriation of such money as it deems necessary for the purposes of the act; and in their application they may place before the auditing board such facts as they deem appropriate and necessary bearing upon the application, and then the auditing board must exercise its discretion as to the amount to be appropriated.     It having appropriated the money, the commander and quartermaster, upon the recommendation of the relief committee, may draw upon the money thus appropri-

ated, and can draw only to the extent of the appropriation. It may be said that, under this construction of the act, the auditing board may not appropriate a sufficient sum to meet the necessities of the indigent and suffering persons mentioned in the act, as determined by the relief committee of the army post. It is quite true that that might occur, and it is also equally true that the relief committee and officers of the Grand Army post might abuse their discretion in asking for more money than was necessary for relief in a prudent and appropriate manner under the act. We must assume that the auditing board, under this act, will discharge its duty faithfully and honestly as public officers, as they would discharge any other duty imposed upon them by law. They are public officers and responsible to the people of the community in which they live for the faithful discharge of their duties, and if they abuse the trust reposed in them by law, the people have the remedy in frequent recurring elections by choosing other persons to take their places. It is not to be supposed that they would any more refuse or neglect to make provision for these indigent persons than they would for the poor of the municipality, for whom, under the general laws of the state, they are obliged to provide.

Now, what are the particular facts of this case? On the 17th day of November, 1890, the Grand Army post of the city of Rome filed a written notice with the city chamberlain signed by the commander, quartermaster and relief committee of the post, in which they estimated that the sum of $1,000 was a sufficient sum for the support in the city of Rome of the indigent persons named in the act for one year thereafter, and they requested that that sum should be appropriated. A short time after the filing of this notice and request the common council acted thereon and appropriated the sum of $500. On the second day of February, 1891, the post applied to the common council for a further appropriation of $500, stating that that sum would be necessary for the support of the veterans for the balance of the year and that they had exhausted the former appropriation. In pursuance of that

application, the common council appropriated $220. In the fall of 1891 the post made application for a further appropriation of $280, under the act, and the common council refused to make the appropriation. Thereafter the relator, as commander of the Grand Army post, made application for a writ of peremptory mandamus, directed to the defendants, commanding them to make the appropriation, and the writ was granted. We are of opinion, under the construction we have given to the act, that the writ should not have been granted.

It is quite true that in the petition and affidavit upon which the application for the mandamus was based it is alleged in very positive terms that the sum of $280 was necessary for the relief of the persons and families named in the act; but that was not the allegation of a concrete fact. It was at most the opinion and judgment of the relief committee, and the officers of the Grand Army post. In looking over the ground, they had determined that certain persons needed relief, and the amount thereof, and upon that determination they based an allegation that the sum asked for was necessary. In opposition to the application, the common council shows that it exercised its discretion when it made the first appropriation of $500. It is shown by the affidavit of one of the members of the common council who was chairman of its committee on poor and poor accounts, that within a short time after the first application for the appropriation, of money, the common council, after investigation, and in the exercise of the judicial discretion vested in it by law, appropriated, for the maintenance of the indigent veterans and their families, the sum of five hundred dollars to be distributed by the proper officers of the post; and immediately thereafter the entire amount was drawn from the city treasury by a single order or draft signed by the officers of the post; that when the application was made for the further sum of $500, the common council proceeded to consider the matter set forth in the application, and to consider the fact that the post officials had expended $500 within three months, one-half

of the sum which in their application they had estimated suf-
ficient for one year; that the common council referred the
matter to its committee on poor and poor accounts, to
investigate and report the amount necessary for the relief
of veterans and their families under the act; that upon
the report of its committee on poor and poor accounts, and
in the exercise of its lawful judicial power and discretion
vested in it under the act, the common council adjudged
and decided that in addition to the sum of $500 there-
tofore appropriated, the further sum of $220 was sufficient
for the purpose specified in the act for the year end-
ing October, 1891; that afterward when the application was
made for the further sum of $280, the common council duly
considered the question of the amount necessary for the sup-
port and relief of the indigent veterans and decided that no
further sum was necessary for that purpose during the current
year.   Other facts are alleged in the affidavit bearing upon the
proper exercise of the discretion vested in the common coun-
cil.   It will be seen from these facts that the common council
did not refuse to act; that in appropriating and refusing to
appropriate moneys it did not act arbitrararily.   It exercised its
judgment and discretion and determined that the $280 applied
for was not necessary.   That determination was not subject to
the review of any court and was final.   Any other construc-
tion of the act would enable an irresponsible body of men to
obtain the funds of any municipality in the state and distribute
them among such persons as they might select, subject to no
practical control by the municipality or any public officer.

Our conclusion therefore is that the orders of the General
and Special Terms should be reversed and the application for
a mandamus denied, without costs to either party.

MAYNARD, J. (dissenting).   I think the orders of the Special
and General Terms should be affirmed.

The act of 1887 (Chap. 706), as amended by the act of 1888
(Chap. 261), imposes upon the appellants the duty of appro-
priating whatever sum may be necessary for the relief of the

indigent veterans and their families residing in the city of Rome.

The moving papers show that two hundred and eighty dollars more than has been appropriated is required for such purposes for the year ending November 1, 1891, and specific facts are given indicating the actual necessity for the use of that sum.

These averments are nowhere denied in the opposing affidavits; if they were it would have been the duty of the Special Term to have awarded an alternative writ. But the appellants have rested their defense upon the allegation that they have judicially decided that no more should be expended for such relief by the officers and committee of the Grand Army post. They do not deny that the number of families to be relieved is correctly stated by the respondents, or that the moneys previously appropriated have been actually and faithfully applied in accordance with the design of the statute. It even affirmatively appears from the appellants' papers that the sum appropriated is inadequate for the support of this class of poor persons, for they allege that from February 2 to April 6, 1891, they relieved the necessities of the same persons and families which the respondents are by law authorized to have the care of, and that since October 26, 1891, they have been and are now using the poor funds of the city for their support. There is no charge of extravagance or abuse of trust. It is admitted that the average monthly expenditure by the respondents for the year ending November 1, 1890, was $93.86, and the amount desired for ten months of 1891 is at the rate of $100 per month, while the cost to the city for the months of February and March, including six days of April, when the poor authorities disbursed the moneys for the same purpose, was over $130 per month. A denial of relief to the respondents in this proceeding cannot, therefore, be placed on the score of economy. The fifth section of the act of 1887 prohibits the public authorities of the city from sending any indigent soldier or his family, or the family of a deceased soldier, to the almshouse without the concur-

rence and consent of the commander of the Grand Army post, and provides that indigent veterans and their families, and the families of deceased veterans, shall, whenever practicable, be provided for and relieved at their homes in the city in the manner specified in sections one and two of the act; that is through the instrumentality of the officers and relief committees of the local post. There is here a plain statutory mandate which the city authorities are required to observe. They are not intrusted with any discretion in the premises.

It does not follow that the amount which may be thus drawn is unlimited. The first section declares that it is only the sums necessary for the relief of this class of poor persons which must be furnished. Neither the public authorities, nor the Grand Army officers can arbitrarily fix the amount that shall be so appropriated. If there is any controversy as to the required sum, it can be judicially determined as other issues of fact are.

The persons to be relieved are also specifically pointed out. They must not only be veterans or the families of veterans, but they must be such as are entitled to relief under the poor laws of the state. If relief is demanded for persons not answering this description, the moneys may be refused, and the applicants compelled to establish their right to relief in the courts.

But in the present case it is not disputed that the moneys demanded are required for the use of the very class which the statute contemplates as the objects of public relief.

The appellants admit the necessity for the expenditure, but refuse to allow it to be made through the medium which the statute has prescribed, and if their position is maintained, the whole scheme and purpose of the law will be defeated.

All concur with Earl, J., except Maynard, J., dissenting.

Orders reversed.