(161 App. Div. 315)

### PEOPLE ex rel. CONDE v. MEYERS, City Comptroller.

(Supreme Court, Appellate Division, Third Department. March 13, 1914.)

ARMY AND NAVY (§ 50*)—PERSONS ENTITLED TO RELIEF—"POOR PERSON."

　　Poor Law (Consol. Laws, c. 45) § 2, defines a "poor person" as one unable to maintain himself, and provides that such person shall be maintained by the town, city, county, or state, according to the provisions of that law. Section 80 provides that poor or indigent soldier, sailor, or marine, or his family, or the families of any one who may be deceased,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall be provided for at their homes, so far as practicable; that the auditing board of any city or town in which they reside shall provide such sum as may be necessary to be drawn upon by the commander and quartermaster of any post of the Grand Army of the Republic upon the written recommendation of the relief committee of such post. *Held*, that section 80 provides only for the support of poor persons as defined in section 2, and a city comptroller properly refused to draw his warrant in favor of a person who was maintaining herself with the aid of her pension from the federal government, though the relief committee of the Grand Army post had duly recommended the payment of a specified sum to her, especially as it would be contrary to the spirit of Const. art. 10, § 2, which provides that all city officers whose election or appointment is not provided for by the Constitution shall be elected or appointed by designated authorities, to permit a voluntary organization owing no responsibility to the public to take upon itself any part of the duties of superintendents of the poor.

[Ed. Note.—For other cases, see Army and Navy, Cent. Dig. § 98; Dec. Dig. § 50.*

For other definitions, see Words and Phrases, vol. 6, pp. 5452, 5453.]

Howard, J., dissenting.

Appeal from Special Term, Washington County.

Mandamus by the People, on relation of Annie E. Conde, against John L. Meyers, as comptroller of the city of Schenectady. From an order granting a peremptory writ commanding the defendant to audit and issue warrants upon the city treasurer in favor of relator, defendant appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Frank Cooper, Corp. Counsel, of Schenectady, for appellant.
Miles R. Frisbee, of Schenectady, for respondent.

WOODWARD, J. The order in this proceeding grants a peremptory writ of mandamus, commanding the comptroller of the city of Schenectady to draw his warrant upon the funds appropriated for the relief of soldiers, sailors, and marines who have done service for the United States, under the provisions of section 80 of the Poor Law (Consol. Laws, c. 45), for the sum of $2.50, this being one of the weekly payments directed to be made to the relator by the relief committee of the Grand Army of the Republic of the city of Schenectady. The petition on which this writ has been granted alleges the necessary jurisdictional facts; shows the existence of the fund in the hands of the proper municipal officers; that her husband was an honorably discharged Union soldier, etc., and that:

"Your petitioner owns no real estate or personal property, and is not a strong, vigorous woman able to support herself by hard manual labor, and is dependent for her support upon the pension of $12 a month which she receives from the United States government and which sum she is not now receiving because the Congress of the United States has failed to appropriate any money for the payment of pensions, and said sum is entirely inadequate to provide your petitioner with shelter, clothing, food, medicines, and other necessities of life, and your petitioner is a poor person, and is now entirely dependent, and needs the sum of $2.50 per week which the relief committee of Horsfall

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Post, No. 90, Department of New York, Grand Army of the Republic, has duly recommended to be paid to her."

The answer of the respondent denies this allegation, and affirmatively alleges that upon an investigation on the part of the department of charities of the city of Schenectady it was found that the relator was "acting as housekeeper for a widower," and that the person making the investigation was—

"informed by said petitioner herein that she had done so for upwards of a year; that said petitioner was, on August 8, 1912, ever since, and for a year prior hereto has been, paid $1.50 per week, plus her full board, for her services as such housekeeper, besides her government pension of $12 per month; that said petitioner was not on August 8, 1912, and has not, at any time since January 1, 1912, been a poor and indigent person within the meaning of the provisions of chapter 46 of the Laws of 1909, and was not on August 8, 1912, and is not entitled to the relief asked for by said relief committee; that toward the end of June, 1912, and after the discovery by said Stern of the address of the petitioner herein, the said relief committee did inform said commissioner of charities of the true address of the petitioner herein, and agreed with said commissioner that she was not at that time in need of relief, and asked the said commissioner to give her relief whenever she should be in need thereof, to which the said commissioner agreed; that said relief committee, nevertheless, continued to present vouchers for payments of money to the said petitioner herein, but no significance was attached to the presentation of such vouchers, as the circumstances of the said petitioner herein had not changed."

Obviously, if this state of facts is true, the relator had no right to the relief demanded. All taxes are levied and collected for public purposes. The only justification for a municipal tax of any character is that it is for a public purpose; the individual parts with his money, at the demand of the taxgatherer, upon the implied understanding that the money is to be used only for a public purpose, and it can never be a public purpose to contribute to the support and maintenance of one as a poor person who is able to take care of himself or herself. A "poor person" is defined by section 2 of the Poor Law, as "one unable to maintain himself," and the statute further provides that "such person shall be maintained by the town, city, county or state, according to the provisions of this chapter." This is the only authority of the statute; it is only such person as is unable to maintain himself that is to be "maintained by the town, city, county or state, according to the provisions of this chapter," and section 80 of the Poor Law is one of the many provisions of the chapter in question, and provides (as amended by chapter 102 of the Laws of 1910) that:

"No poor or indigent soldier, sailor or marine who has served in the military or naval service of the United States, nor his family nor the families of any who may be deceased, shall be sent to any almshouse, but shall be relieved and provided for at their homes in the city or town where they may reside, so far as practicable, * * * and the proper auditing board of such city or town * * * shall provide such sum or sums of money as may be necessary to be drawn upon by the commander and quartermaster of any post of the Grand Army of the Republic, * * * made upon the written recommendation of the relief committee of such post * * * and such written request and recommendation shall be a sufficient authority for the expenditures so made."

The auditing board is to provide such funds "as may be necessary to be drawn upon," not at the mere caprice of the commander and

146 N.Y.S.—35

quartermaster, but for the purpose of maintaining such persons as are unable to maintain themselves—such persons as are "poor persons" within the law, and who would have to be taken care of whether veterans of the United States or not. In other words, there is no larger authority given to municipal corporations to take care of soldiers, sailors, or marines than is given to them for the care of poor persons generally; it merely provides that they shall be cared for differently, and the suggestion that when "a Grand Army post assumes the supervision of the relief for poor veterans, its jurisdiction becomes complete and absolute" seems to me to overlook the fact that neither the Grand Army post or the auditing board of the city has any authority whatever to deal with the funds except for "poor persons" as defined by the statute, and that the determination of the Grand Army post that some particular individual should be given a sum of money each week is not conclusive upon the comptroller of the city; that this officer has no authority to pay out the public funds for private purposes. While the written request and recommendation would, no doubt, be a protection to the comptroller in issuing his warrant, where he acted in good faith and without knowledge of the facts, I cannot believe that he is called upon to issue a warrant for the payment of a sum of money which he knows is not necessary for the maintenance of a "poor person," as defined by law. The officers of the Grand Army post are simply made the agents of the municipality in performing a duty which the law imposes upon such municipality to take care of poor persons. Clearly if the common council of the city of Schenectady were to appropriate a sum of money to a person who was in fact taking care of himself, where there was no legal or equitable claim for the same, it would be the duty of the comptroller to refuse to consummate the diversion of public funds, and I can see no difference in the case because the common council has, upon the recommendation of the Grand Army post, set aside a particular fund to be disbursed upon the recommendation of the officers of the post. Only so much of the fund as is necessary for the maintenance of poor persons is lawfully available; there can be no warrant beyond that, and if the comptroller knows that any part of such fund is being distributed where it is not necessary, he is simply performing his duty in refusing to permit the funds to be drawn upon his warrant. Maynard, J., in writing the dissenting opinion in People ex rel. Crammond v. City of Rome, 136 N. Y. 489, 499, 32 N. E. 984, 986, says:

"The persons to be relieved are also specifically pointed out. They must not only be veterans or the families of veterans, but they must be such as are entitled to relief under the poor laws of the state. If relief is demanded for persons not answering this description, the moneys may be refused, and the applicants compelled to establish their right to relief in the courts."

It was upon this ground principally that he urged that it was the duty of the common council of the city to appropriate to the Grand Army fund the amount named by that organization for the purpose of maintaining poor persons who were veterans, or members of families of veterans, a proposition which the court refused to sustain, holding that it was for the common council to exercise its own judgment

as to the amount which was necessary after the Grand Army post had made its recommendation. In that case the court, after pointing out the features of the statute, say:

"Such an extraordinary statute which thus places the public money at the uncontrolled disposal of irresponsible persons not chosen by the people or appointed by any public body, or under the control of any public officer, should, so far as possible, be limited in its operation and scope, and public policy requires that it should be strictly and narrowly construed."

While the courts have been disposed to go far in sustaining legislation designed to give preference to veterans of the Civil War, it seems to me we have no right to go beyond the language used by the Legislature, and to attempt to give away the money of the people to persons who have no claim in law or equity upon such funds. It is an encroachment upon the spirit at least of section 2 of article 10 of the state Constitution, popularly known as the "home rule" provision, to permit a mere voluntary organization, owing no responsibility to the public, to take upon itself any part of the duties of superintendents of the poor (People ex rel. Met. St. Ry. Co. v. Tax Com'rs, 174 N. Y. 417, 435, 67 N. E. 69, 63 L. R. A. 884, 105 Am. St. Rep. 674, and authorities there cited), and I am clearly of the opinion that it is not the duty of the courts to rebuke a public official, charged with the duties commonly belonging to a comptroller, for having refused to issue his warrant for the payment of a sum of money for which the law has not provided, assuming, of course, that it is true that the relator was at the time maintaining herself with the aid of the federal government—that she was not, under the statute, a "poor person."

The order, in my opinion, should be reversed, and the issue of fact should be tried out upon return of an alternative writ.

HOWARD, J. (dissenting). Sections 80 and 81 of the Poor Law make special provisions for the relief of soldiers, sailors, and marines and their families. These sections provide, in substance, that no old soldier or sailor shall be sent to any poorhouse, nor any member of his family, whether the veteran be dead or alive, but that they shall be taken care of at home. The person so provided for must have been a resident of the state for one year. In executing this purpose to segregate the old Civil War veterans and the Spanish War veterans and their families from the ranks of the common poor and relieve them from the stigma of pauperism, sections 80 and 81 have undertaken to remove them completely from the jurisdiction of the poor authorities. It, therefore, directs that the proper city authorities shall provide such sums of money as may be necessary for their relief, and that their wants shall be looked after by a committee of veterans instead of the ordinary poor authorities. A written request from the commander and quartermaster of any Grand Army post or Spanish War camp shall be sufficient authority for the expenditure of the money. Before such post or camp can act, it is required to file with the clerk of the municipality where it is situated a written notice of its purpose to undertake the supervision of the relief for poor veterans and their families; it must also comply with certain other formalities.

In the city of Schenectady the sum of $2,500 was set apart, under

the authority of section 80, in the year 1912 for the relief of veterans and their families. In that city Horsfall Post gave the notice and complied with all the prerequisites and formalities necessary to entitle it to supervise the relief for veterans and their families. Annie E. Conde, the relator herein, resides in Schenectady, and is the widow of an honorably discharged soldier of the United States. She draws a pension of $12 a month. The relief committee of Horsfall Post investigated her case, and recommended that she be allowed from the veteran's fund, $2.50 a week. This was paid to her for some time, but finally the commissioner of charities of the city made an investigation of the cause, and reached the conclusion that the woman was not in need of the money, and disapproved of the voucher presented August 8, 1912, by the Grand Army post. The comptroller accordingly refused to audit the voucher or issue a warrant for its payment. A peremptory writ of mandamus has been issued to compel the comptroller to audit and allow and issue a warrant for the payment of the voucher in question, and for all unpaid vouchers in arrears. Certain immaterial issues were presented by the answer of the comptroller, but only one question calls for discussion here; that relates to the right of the commissioner to supervise and investigate and pass upon recommendations for relief presented by Grand Army posts or Spanish War camps.

The whole scheme of the law contemplates the complete removal of veterans and their families from the ordinary ranks of the poor and from the jurisdiction of the poor authorities. Consideration for the services which these veterans have rendered to the Republic has led the Legislature to treat their indigence with more delicacy and concern than is accorded to the ordinary citizen in want. They are not to be subjected to that humiliation and annoyance which comes from an application to the public authorities for help. They are not to be forced to gather in company with other destitute persons at the office of the commissioner of charities, begging for alms, nor to herd together in almhouses with common paupers. Neither are the public officials having charge of the poor permitted to pry into their affairs or visit their homes or become familiar with their destitution. All this is to be attended to by the posts and camps. It is their friends and acquaintances and brother veterans to whom this duty is delegated. They are to be maintained in the privacy of their own homes, and no commissioner of charities or other official of the poor has any right to intrude himself upon them. This is the scheme of the law.

Sections 80 and 81 are not altogether specific and definite. These sections are not particularly well framed but their intent is very evident. When a Grand Army post assumes the supervision of the relief for poor veterans, its jurisdiction becomes complete and absolute. Of course it cannot be permitted to abuse the authority delegated to it, but there is no allegation of abuse here. It follows in this case that the commissioner of charities of the city of Schenectady had no right to inquire into the matter in question, or jurisdiction to reject or pass upon the voucher of August 8, 1912, and that it was the duty of the comptroller to audit the same and issue a warrant for its payment.

The order should be affirmed, with costs.