In the Matter of INEZ EVANS, Appellant, *v.* CHARLES W. BERRY, as Comptroller of the City of New York, Respondent.

(Argued April 24, 1933; decided May 23, 1933.)

*Irwin J. Sikawitt* for appellant.

*Edwin M. Borchard, amicus curiæ.*

*Arthur J. W. Hilly, Corporation Counsel (J. Joseph Lilly, Henry J. Shields* and *Thomas W. A. Crowe* of counsel), for respondent.

POUND, Ch. J. On February 5, 1927, members of the police force of the city of New York, lawfully engaged in the pursuit of robbers who had held up a drug store on Melrose avenue in the borough of The Bronx, fired a number of pistol shots at the fugitives. The appellant, who was at the time passing along Melrose avenue near the scene of the holdup, was struck by a bullet from the revolver of one of the police officers and so wounded that she is now a partial cripple.

On December 10, 1927, the Municipal Assembly of the City of New York adopted a local law known as New York City Local Law No. 13 of 1927, which provided:

" Section 1. The board of estimate and apportionment is hereby authorized and empowered, in its discretion, to make an award to a person who has been or hereafter shall be injured by a police officer while such officer is engaged in arresting any person or in retaking any person who has escaped from legal custody or in executing any legal process. Such award shall be of such amount as the board of estimate and apportionment shall deem just and equitable."

On January 26, 1928 the Board of Estimate and Apportionment of the City of New York adopted a resolution by which the petitioner was awarded $6,740 for damages and expenses resulting from the accident.

The defendant, the Comptroller of the City of New York, refused to pay the award and the Appellate Division has sustained him, reversing the Special Term and holding that municipal liability could not constitutionally be extended by local law so as to cover the case.

The question is thus presented whether the city of New York may constitutionally assume a liability for the act of a police officer who, with or without fault on his part, injures an innocent bystander while engaged in his governmental duty of making an arrest.

The pertinent provisions of the Constitution as to the powers of the city are contained in article XII, section 3, which contains the Home Rule provisions incorporated in the Constitution in the fall of 1923. Section 3 reads as follows:

" Power of cities to enact local laws.— § 3. Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state, relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and com-

pensation of all officers and employees of the city, the transaction of its business, *the incurring of its obligations, the presentation, ascertainment and discharge of claims against it,* the acquisition, care, management and use of its streets and property, the wages or salaries, the hours of work or labor, and the protection, welfare and safety of persons employed by any contractor or subcontractor performing work, labor or services for it, and the government and regulation of the conduct of its inhabitants and *the protection of their property, safety and health.* The legislature shall, at its next session after this section shall become part of the constitution, provide by general law for carrying into effect the provisions of this section."

Thus was wrought an extensive but not complete separation from the State of the power to govern the cities of the State.

Following the adoption of this amendment to the Constitution the Legislature enacted the City Home Rule Law (Cons. Laws, ch. 76; Laws of 1924, ch. 363, as amd. L. 1928, ch. 670, L. 1929, ch. 646), which, among other matters, provides:

" § 11. Power of cities to adopt and amend local laws.

" 1. Unless hereafter restricted by the legislature under the provisions of section one of article twelve of the constitution, the local legislative body of a city shall have power to adopt and amend local laws in relation to the property, affairs or government of a city including but not limited to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city, the transaction of its business, *the incurring of its obligations, the presentation, ascertainment and discharge of claims against it,* the acquisition, care, management and use of its streets and property, the wages or salaries, the hours of work or labor, and the protection, welfare and safety of persons employed by any contractor or subcontractor performing work, labor or services for it, the government and regu-

lation of the conduct of its inhabitants and *the protection of their property, safety or health.*

" 2. In the exercise of such powers, the local legislative body of a city shall have power.

" a. To delegate to any local authority power, by rule, regulation, resolution or ordinance, to provide for carrying into effect the provisions of any local law.

" § 31. Construction. This chapter shall be construed liberally. *The powers herein granted shall be in addition to all other powers granted to cities by other provisions of law.*"

By the General City Law (Cons. Laws, ch. 21; Laws of 1913, ch. 247) it is provided:

" § 20. Grant of specific powers. Subject to the constitution and general laws of this state, every city is empowered: * * *

" 5. * * * *to pay or compromise claims equitably payable by the city, though not constituting obligations legally binding on it,* * * *.*"

The power has thus been delegated, both expressly and by implication, to the city to allow equitable claims against it, so that the city has all the power to recognize equitable claims against it that the State had to recognize equitable claims against the State, except as limited by the Constitution itself and by general laws.

Local laws must be consistent with the Constitution. Section 10, article VIII of the Constitution reads in part as follows:

" § 10. No * * * city * * * shall hereafter give any money or property, or loan its money or credit to or in aid of any individual, association or corporation, * * *; nor shall any such * * * city, * * * be allowed to incur any indebtedness except for * * * city, * * * purposes * * *.*"

It follows that the local law is invalid if it provides for a gift to an individual or permits the creation of an indebtedness for other than a city purpose.

At common law cities were not liable for the torts of

police officers. Although appointed and paid by the city, such officers were not regarded as municipal agents or servants. When acting in the course of their duty, they were said to be performing a governmental function. The city was immune from liability because the doctrine of *respondeat superior* was held to be inapplicable. This was a rudimentary survival of the maxim " The King can do no wrong." (*Maxmilian* v. *Mayor*, 62 N. Y. 160, 164; *Augustine* v. *Town of Brant*, 249 N. Y. 198, 204.) In Ohio the courts changed the common-law rule so as to impose liability on the city for the wrongful acts of its policemen and firemen in *Fowler* v. *City of Cleveland* (100 Ohio St. 158) only to restore it in *Aldrich* v. *City of Youngstown* (106 Ohio St. 342).

It has not been questioned in this court that the Legislature may impose on the cities liability for the negligent acts of their police officers. This was done by Highway Law (Cons. Laws, ch. 25), section 282-g, added by Laws of 1929, chapter 466, enacted to make municipalities liable for the negligence of the operators of their vehicles in the exercise of their statutory duties, in the course of their employment and in the discharge of their governmental functions. (*Miller* v. *City of New York*, 235 App. Div. 259.) The Legislature provided that such an operator should, for the purpose of the act, " be deemed to be an employee of the municipality, *notwithstanding the vehicle was being operated in the discharge of a public duty.*" The act of the Legislature in thus changing the common-law rule was held by this court not even to involve the construction of the Constitution of the State. An appeal to this court from a unanimous affirmance of a decision upholding the validity of the statute, taken as of right and without leave, under Civil Practice Act, section 588, subdivision 1, was dismissed in *Rothman* v. *City of New York* (259 N. Y. 663) on the ground that no constitutional question was involved. There is no lack of power in the Legislature to change the common-law

rules of liability and create statutory rules in place thereof without offending any constitutional limitation by the mere fact of change. (*Matter of Borup*, 182 N. Y. 222.)

The case before us, however, presents another and somewhat different question in that the amendment to the Highway Law covered only the negligent operation of municipally owned vehicles. The local law in question not only changes the common-law rule of non-liability of the city for the torts of police officers in the discharge of their governmental functions but also imposes liability on the city although the police officer may have been without fault and the injury a mere accident. Much that was said in the workmen's compensation case (*Ives* v. *South Buffalo Ry. Co.*, 201 N. Y. 271) about the constitutional vice of providing a remedy which takes one's property without fault on his part was rendered obsolete by *Arizona Employers Liability Cases* (250 U. S. 400). It was there held that the Legislature might constitutionally shift the risks inherent to hazardous employments from the employer to the employee and thus, in proper cases, impose liability without fault. PITNEY, J., writing for the majority of the court, said (p. 419): " The states are left with a wide range of legislative discretion, notwithstanding the provisions of the Fourteenth Amendment; and their conclusions respecting the wisdom of their legislative acts are not reviewable by the courts."

The power of the State of New York to recognize moral obligations or equities arising out of the facts has been repeatedly upheld. (*Williamsburgh Sav. Bank* v. *State*, 243 N. Y. 231, 240.) Perhaps the most interesting case in point is *Munro* v. *State* (223 N. Y. 208), for that is a case where the State assumed liability without fault for injuries sustained by a fireman in a State hospital for the insane who was assaulted when on duty by an insane inmate of the institution. At page 216, Judge CRANE, writing for a unanimous court, makes the following pertinent inquiry: " Can it be that the legislature may place

liability upon the employer irrespective of negligence, and that the state itself cannot recognize as a just and equitable obligation a personal injury received by one of its employees unless some legal principle the application of which has now been abolished would have created liability in an individual or corporation?"

This brings us to the point of determining whether, assuming, as we must, that the city had the power to recognize a true moral obligation or duty, the power has been properly exercised in this case. We have already taken notice of the fact that in the crowded streets of a great city police officers may shoot at fugitives fleeing from justice and that accidental injuries to people on the street may result therefrom. (*Matter of Katz* v. *Kadans & Co.*, 232 N. Y. 420, 422.)

A moral obligation is a duty assumed in obedience to the rules of right conduct. People differ as to the standard of right conduct. Some take as their standard of moral duty the letter of the law; others the Golden Rule. The question is not as to our own standard but the standard which the city may adopt. Is it an impossible, quixotic standard whereby the money of the city may be given away without regard to any visible equity or does it rest on common sense conceptions of moral duty? The city may be just but it may not distribute largess.

The question is whether persons so injured should alone assume the risk of such injury or whether the city should compensate them for their loss. The common law fixed a standard of liability which relieved the city. The city has chosen to be more liberal. It cannot be said that the standard of duty which it has adopted has nothing to sustain it.

As was noted in *Augustine* v. *Town of Brant* (*supra*, p. 205) the modern tendency is against the rule of non-liability of municipalities for the acts of firemen and policemen employed by them. The fiction that they are not acting in the course of their duties as city employees is

no longer regarded as a part of the fundamental law. ·The tendency to apply the rule of *respondeat superior* has been noted with approval in articles by Professor Borchard entitled " Governmental Responsibility in Tort " (28 Columbia Law Review, pp. 577, 735) and " Government Liability in Tort " (34 Yale Law Journal, 229, 240) and a note on " Municipal Responsibility for the Torts of Policemen " (42 Yale Law Journal, 241); an article by the late Attorney-General Hamilton Ward on " Municipal Liability " (Vol. 2, No. 7 [Sept. 1930], N. Y. State Bar Assn. Bulletin, p. 402); a note in 16 Cornell Law Quarterly, 359, and " The Extension of Municipal Liability in Tort " by Charles W. Tooke (19 Virginia Law Review, 97) and in many other books and articles where the subject of municipal liability is discussed.

Assumption of liability does not constitute a gift or gratuity to the injured person so long as it is the legitimate recognition of an equitable claim. (*Farrington* v. *State*, 248 N. Y. 112, 115.) The purpose is a city purpose for it provides for the protection of people who are thus exposed to the risk of injury when on city streets.

The extent to which moral and equitable claims against the city should be recognized is primarily for the city itself to determine (*United States* v. *Realty Co.*, 163 U. S. 427), provided only that it may not expend the city money for other than a city purpose or give it away. Constitutional local self-government should not be hamstrung by the courts for economic reasons. Prior to the Home Rule amendment, the State might have imposed such liability on the city. Now the city may self-impose such a liability, if it sees fit to assume the burden. The local law should be upheld.

Some question is raised regarding the form of the local law as permitting the Board of Estimate and Apportionment to bestow gratuities on favored claimants in its discretion while it refuses to allow just compensation to others equally worthy. We see nothing in the local law

to compel such a construction. The local law might be improved in draftsmanship but its purpose is to give the board the same jurisdiction over claims specified therein as it has over other claims against the city. We must assume that the auditing body under this local law will discharge its duty faithfully and honestly as public officers, as it would discharge any other duty imposed on it by law. (*People ex rel. Crammond* v. *City of Rome*, 136 N. Y. 489, 495.)

The fact that the statute applies to persons receiving injuries prior to its enactment is no objection to its validity. (*Jackson* v. *State*, 261 N. Y. 134.)

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

CRANE, LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Ordered accordingly.