33 N.Y.2d 275 (1973)
Lynda Jones, Individually and as Administratrix of The Estate of Herbert W. Jones, Jr., Deceased, Appellant,
v.
State of New York, Respondent, and Vincent Mancusi et al., Defendants. (Claim No. 54555.)
Court of Appeals of the State of New York.
Argued October 15, 1973.
Decided December 27, 1973.
William J. Cunningham, Jr. and Carol Eve Casher for appellant.
Louis J. Lefkowitz, Attorney-General (Jean M. Coon and Ruth Kessler Toch of counsel), for respondent.
Chief Judge FULD and Judges GABRIELLI and WACHTLER concur with Judge BURKE; Judge JASEN dissents and votes to affirm in a separate opinion in which Judges BREITEL and JONES concur.
*278 BURKE, J.
Claimant seeks to recover damages from the State for the false imprisonment, pain and suffering and mental anguish which her decedent sustained prior to his death as well as for his wrongful death. The State moved in the Court of Claims to dismiss the claim on the grounds that workmen's compensation is claimant's sole remedy and that the claim failed to state a cause of action since the State is insulated against the alleged liability by the doctrine of sovereign immunity. The Court of Claims denied the motion to dismiss stating that there were factual questions which "in the opinion of the Court cannot be resolved upon a motion to dismiss." The Appellate Division, by a closely divided court, (3-2), reversed the order of the Court of Claims, granted the State's motion and dismissed the claim. The majority held that the State was immune from liability since it was acting in its sovereign capacity and therefore, nothing claimant could establish on her pleadings could render the State liable for the injuries and death of her husband. The order of the Appellate Division should be modified.
The facts are simply stated. Claimant's decedent was employed by the Department of Correctional Services, a subdivision of the State of New York, in the capacity of accounts clerk at the Attica State Correctional Facility. His position was clerical and in no way was he involved in the guarding or disciplining of prisoners. On September 9, 1971, while so employed, he was taken hostage during the occurrence of what is now recalled as the "Attica uprising". The claim alleges two causes of action. The first is based upon the negligence of the State in failing to warn the decedent of the impending riot of which the State had, or should have had, knowledge. The second cause of action is based upon intentional tort, alleging that during the forceful retaking of the prison on September 13, 1971 a State trooper "without just cause or provocation and with great force and violence, wilfully and intentionally assaulted and battered the Claimant's decedent by firing several shots of a gun at Claimant's decedent, one or more of which *279 shot and struck him in the head, chest and back, thereby causing his death."
As to the first cause of action, the order appealed from should be affirmed. The cause of action is one in negligence. Since the claim alleges that the State was negligent while the decedent "was performing his clerical duties as an accounts clerk", the claim must be dismissed and the plaintiff is relegated to workmen's compensation as her exclusive remedy.
The second cause of action alleges that a State trooper "wilfully and intentionally assaulted" plaintiff's decedent causing his death. This claim states a cause of action and that part of the Appellate Division order which dismissed this claim is reversed. The majority below relied heavily upon Weiss v. Fote (7 N Y 2d 579 [1960]) and cites Bellows v. State of New York (37 A D 2d 342 [4th Dept., 1971]) and Newiadony v. State of New York (276 App. Div. 59 [3d Dept., 1949]) in support of its position. Reliance upon these cases is misplaced as the claim does not sound in negligence but alleges an intentional tort in that a State trooper shot the decedent dead. The claim alleges a cause of action similar to the cause of action sustained by this court in the case of Kline v. State of New York (278 N.Y. 615 [1938]). There, this court held that the State is liable for an assault committed upon the plaintiff by troopers which was "without cause or provocation and unjustifiable" (id., at p. 616), the precise words used in the instant claim.
The concept is not novel. A long line of cases has held the State or municipalities liable for the actions of their police officers in the line of duty. Hinton v. City of New York (13 A D 2d 475 [1st Dept., 1961])  plaintiff, while being lawfully arrested, was struck by several police officers; Franklin v. State of New York (276 App. Div. 1038 [3d Dept., 1950])  plaintiff was assaulted by State troopers during his detention; Huff v. State of New York (271 App. Div. 1040 [3d Dept., 1947])  plaintiff was assaulted by a State trooper in the course of a criminal investigation; Egan v. State of New York, (255 App. Div. 825 [4th Dept., 1938])  plaintiff was assaulted by a State trooper during the course of his arrest. In each of these cases the troopers were engaged in activities which can only be described as "governmental" in nature. The theory upon which recovery from the State in these cases is premised is found in *280 section 8 of the Court of Claims Act. Prior to the enactment of this section police officers were considered public officers whose actions in the area of governmental activities could not fasten liability upon the State (Woodhull v. Mayor, 150 N.Y. 450 [1896]). However, with the waiver of immunity effected by the enactment of section 12-a, the present section 8, of the Court of Claims Act, the State and its civil subdivisions became liable for the torts of their agents on the basis of respondeat superior, notwithstanding the fact that the agent was engaged in "governmental" activity. (McCrink v. City of New York, 296 N.Y. 99 [1947]; Steitz v. City of Beacon, 295 N.Y. 51 [1945]; Bernardine v. City of New York, 294 N.Y. 361 [1945]; McCarthy v. City of Saratoga Springs, 269 App. Div. 469 [3d Dept., 1945]). The case of Weiss v. Fote (supra) dealt with planning highway safety for the community and, in light of the allegations in this claim, we fail to see its relevance to the instant case.
Nor should the fact that the decedent suffered his fatal injuries during the Attica riot bar his recovery. That fact is irrelevant in light of the settled law. The action of retaking the prison is no more "governmental" than making an arrest, maintaining someone in custody or investigating a traffic infraction. The use of excessive force by troopers during these activities was sufficient to fasten liability upon the State. A different rule should not apply here. Should the Judge in the Court of Claims find that the force used against the decedent was more than necessary under all the circumstances, then plaintiff is entitled to recover (Hinton v. City of New York, 13 A D 2d 475, supra; see, also, 3 N. Y. Juris., Assault and Battery, §§ 8, 11, at pp. 235, 238; 40 N. Y. Juris., Municipal Corporations, §§ 1003, 1009, p. 262).
Finally, in reversing the dismissal of the second cause of action, we note that due to the chaotic conditions which surrounded this tragedy the claimant faces a heavy burden of proof in her attempt to establish the use of excessive force by the State. A mountain of facts has been presented by the McKay Commission, a fact-finding body which was established by the Governor subsequent to the revolt. The findings, which were presented in Attica: The Official Report of the New York Special Commission on Attica (Bantam, 1972), indicate that the *281 State troopers' assault was "marred by excesses". The commission found that the type ammunition used by the troopers presented "a high risk of injury and death to unresisting inmates and hostages." In light of all the circumstances such summary treatment of the second claim was particularly inappropriate.
Accordingly, the case should be remanded for further proceedings not inconsistent with this opinion.
JASEN, J. (dissenting).
On this appeal from dismissal of a claim for damages for wrongful death, important questions are raised concerning the remedies for the torts of law enforcement officers. Affording the claimant the most liberal reading of the allegations of the claim, as is required on a motion to dismiss, I must nevertheless conclude that sovereign immunity is a bar to granting relief, and, accordingly, that claimant's exclusive remedy is in workmen's compensation.
The claim alleges that Herbert Jones was employed by the State as an accounts clerk at the Attica Correctional Facility. On September 9, 1971, at the outbreak of the uprising at Attica, he was taken hostage by the prisoners. He died on September 13, 1971 of wounds inflicted by State policemen engaged in suppressing the uprising and retaking the facility.
Two claims or causes are pleaded. The gravamen of the first is negligence on the part of agents of the State in failing to warn the decedent of the impending riot. The crux of the second is intentional tort  assault and battery  that in the course of implementing the State's decision to retake the facility by force of arms, State policemen "wilfully * * * assaulted and battered the Claimant's decedent by firing several shots of a gun at * * * [him], one or more of which * * * struck him in the head, chest and back, thereby causing his death."
The immunity of the States and their civil subdivisions from liability for police torts may be traced to the pre-Civil War era. (E.g., Dargan v. Mayor of Mobile, 31 Ala. 469; Stewart v. City of New Orleans, 9 La. Ann. 461, 61 Am. Dec. 218; see, generally, Shapo, Municipal Liability for Police Torts: An Analysis of a Strand of American Legal History, 17 U. Miami L. Rev. 475, 476-478.) In this State, the early cases dealt almost exclusively *282 with the liability of municipal corporations for the torts of local law enforcement officers. Two theories were articulated for insulating the municipality from liability, each deriving from the maxim that "the King can do no wrong". The first was based on principles of agency  that policemen were not agents or servants of the municipality but "public servants of the state". (Woodhull v. Mayor of N. Y., 150 N.Y. 450; McKay v. City of Buffalo, 9 Hun 401, affd. 74 N.Y. 619; Maxmilian v. Mayor, 62 N.Y. 160.) The second, a related rationale sometimes espoused alternatively with the agency theory, was that the functions of the police were "governmental" in nature, as opposed to "proprietary" or "corporate", and that in the performance of its "governmental" duties the municipality was not liable for the acts of its agents and officers. For half a century, in a variety of cases, "governmental" function stood as a bar to recovery. (Lacock v. City of Schenectady, 224 App. Div. 512, affd. 251 N.Y. 575 [plaintiff's decedent killed by police motorcycle]; Wilcox v. City of Rochester, 190 N.Y. 137 [fall into elevator well in police building]; Woodhull v. Mayor of N. Y., supra [false imprisonment].)
However, the need for an expanding concept of the law with respect to municipal tort liability soon became apparent. In Augustine v. Town of Brant (249 N.Y. 198, 205), this court noted that "[t]he modern tendency is against the rule of nonliability." And in Matter of Evans v. Berry (262 N.Y. 61), we upheld an award by the New York City Board of Estimate for a bullet wound sustained by a bystander from a revolver fired by a policeman chasing robbers. Premised on a statutory provision empowering the city "to pay or compromise claims equitably payable * * * though not constituting obligations legally binding on it" (262 N. Y., at p. 67), we held that the award was not an unconstitutional gift of public funds but "the legitimate recognition of an equitable claim" (262 N. Y., at p. 71). The decision was significant for its frank recognition of the injustice of the ancient rule that the innocent bystander, shot by stray bullets from the policemen pursuing criminals or making arrests, must alone bear his loss.
Aided by two statutes, the destruction of immunity for police torts proceeded apace. One of these provided for municipal *283 liability when a "municipally owned vehicle" caused injuries, if the operator were acting within the scope of his official duties. (Former Highway Law, § 282-g, L. 1929, ch. 466; now General Municipal Law, § 50-a.) The other was the notable section 8 of the Court of Claims Act (formerly § 12-a), which provided: "The state hereby waives its immunity from liability * * * and consents to have the same determined in accordance with the same rules of law as applied * * * against individuals or corporations". The gist of this waiver, although operative since 1929, was not fully apparent until this court decided the celebrated case of Bernardine v. City of New York (294 N.Y. 361). Bernardine was an action in negligence to recover for injuries caused by a runaway police horse. We held the cause maintainable under either section 50-b of the General Municipal Law or section 8 of the Court of Claims Act, noting that the latter effected a waiver of immunity of the State and its civil divisions. (294 N. Y., at p. 365.)
There followed a host of cases recognizing municipal liability under the Court of Claims Act for the negligence of law enforcement officers in the line of duty. (E.g., Dunham v. Village of Canisteo, 303 N.Y. 498 [arrested man died from pneumonia caused by exposure in the jail and failure to treat a fractured hip and elbow]; Wilkes v. City of New York, 308 N.Y. 726 [bystander negligently shot by a policeman engaged in an altercation with another]; Flamer v. City of Yonkers, 309 N.Y. 114 [man negligently shot by a policeman for making a disturbance while intoxicated]; Meistinsky v. City of New York, 309 N.Y. 998 [holdup victim killed by an untrained police officer's bullets]; Lubelfeld v. City of New York, 4 N Y 2d 455 [taxicab driver shot by a passenger negligently placed in his cab by policeman]; O'Grady v. City of Fulton, 4 N Y 2d 717 [man arrested for public intoxication died from cerebral hemorrhage in consequence of police failure to procure medical aid]; Benway v. City of Watertown, 1 A D 2d 465 [wife shot by her husband to whom the police had negligently returned a pistol]; Adamo v. P. G. Motor Frgt., 4 A D 2d 758 [bystander injured while directing traffic at the instance of a police officer].)
Similarly, under the Court of Claims Act, the courts found little difficulty in applying the principle of respondeat superior and imposing liability upon the State or its municipalities for *284 the intentional torts of police officers committed in the performance of their official duties.[*] (E.g., Kline v. State of New York, 278 N.Y. 615 [State police officers unjustifiably assaulted man during course of disturbance incident to a milk producer's strike]; Egan v. State of New York, 255 App. Div. 825 [assault by State policeman while effecting an arrest]; McCarthy v. City of Saratoga Springs, 269 App. Div. 469 [willful assault by city policeman]; Huff v. State of New York, 271 App. Div. 1040 [assault by State policeman during the course of a criminal investigation]; Young v. Village of Potsdam, 272 App. Div. 847, affd. 297 N.Y. 712 [willful assault by city policeman]; Franklin v. State of New York, 276 App. Div. 1038 [brutal assault by State policemen during detention of arrestee at police barracks]; Jones v. City of Rochester, 284 App. Div. 1029 [assault by city policeman while taking intoxicated arrestee to police station]; Hinton v. City of New York, 13 A D 2d 475 [assault and use of inordinate force by city police officers in the course of arresting plaintiff who was involved in a street "scene"]; Baynes v. City of New York, 23 A D 2d 756 [assault by city policeman upon arrestee at police station]; Daniels v. City of Syracuse, 200 Misc. 415 [assault by city police officer as plaintiff was being led through a corridor at police headquarters].)
Thus, in the main it was the waiver of immunity in the Court of Claims Act that removed the bar that previously prevented actions based on police torts. (Schuster v. City of New York, 5 N Y 2d 75.) But as this court made clear in Weiss v. Fote (7 N Y 2d 579), although the State (and its civil divisions) has waived its immunity from liability arising from its sovereign character, the Court of Claims Act did not destroy all facets of governmental immunity (id., at pp. 586-587). "It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government * * * but to submit to a jury [or a court] the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question." (Id., at p. 585.) That is akin to saying that discretionary determinations made *285 by a co-ordinate branch of government must be immune from judicial scrutiny.
The question is, however, at what level a discretionary act becomes a political one, immune from judicial review. True, it may be difficult to define with precision what is a discretionary function for immunity purposes. But whatever the "linedrawing" difficulties in future cases, a workable definition will be one recognizing that "[m]uch of what is done by officers and employees of the government must remain beyond the range of judicial inquiry" (3 Davis, Administrative Law Treatise [1958], § 25.11, p. 484), and that obviously "it is not a tort for government to govern" (Dalehite v. United States, 346 U. S. 15, 57 [JACKSON, J., dissenting]). But that it is not to say that all decisions by government officials involving the exercise of judgment should be immune from judicial review. Thus, semantical, purely literal, distinctions between ministerial and discretionary functions are not helpful. (Indeed, it is difficult to conceive of any official act that does not admit of some discretion in its performance.) Rather, the focus should be upon an assurance of judicial abstention in areas in which the responsibility for basic policy decisions has been committed to co-ordinate branches of government. Any wider review would place the courts in the unseemly position of passing upon the propriety of decisions expressly entrusted to a co-ordinate branch, a role and a function not consonant with the doctrine of separation of powers. Indeed, the very potentiality for such review might in the first instance affect the co-ordinate body's deliberative and decision making processes. (Jaffe, Judicial Control of Administrative Action, pp. 241-259; James, Tort Liability of Governmental Units and Their Officers, 22 U. Chi. L. Rev. 610, 637-638, 640, 651; Note, The Discretionary Function Exception of the Federal Tort Claims Act, 66 Harv. L. Rev. 488, 498.)
So viewed, a rationale becomes apparent for the liability of the State and its civil divisions in the garden variety police tort case. (See Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, 456 F.2d 1339, 1346 [2d Cir.].) For example with regard to the arrest situation where a policeman commits an intentional tort, doubtless it is true that in effecting the arrest the officer must exercise some discretion, perhaps a high *286 degree. (Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics, supra, at p. 1346; Carter v. Carlson, 447 F.2d 358, 363, n. 9, revd. in part on other grounds sub nom. District of Columbia v. Carter, 409 U. S. 418.) But in reviewing the exercise of that discretion, basic policy decisions of a co-ordinate branch of government are not called into question, nor is the effective operation of a police department thereby impeded. Moreover, as to the latter, any threat posed thereto by the potentiality of damage suits would appear to be outweighed by the public interest in a tort remedy for police misconduct.
Were the case before us a simple police tort case, I would concur for reversal. But it is not. Looking to the substance of the claim for wrongful death, rather than the form of the pleading, however artfully drawn in terms of a conventional, intentional police tort (cf. Olson v. United States, 93 F.Supp. 150 [D. N. D.]), the claimant is aggrieved by a basic discretionary policy decision  the manner and means of coping with the tragic uprising at Attica  made at the highest levels of the executive branch of government by officials entrusted with the responsibility for managing the correctional system. Involved is an area of quasi-legislative policy making in a co-ordinate branch of government sufficiently sensitive to warrant immunization from judicial review lest considerations of separation of powers be infringed and the executive's deliberative and decision making processes in crisis situations be invaded.
Neither McCrink v. City of New York (296 N.Y. 99) nor Schuster v. City of New York (5 N Y 2d 75, supra) undercuts this analysis. In McCrink, the city was held liable for the negligence of the police commissioner in failing to discharge an habitually drunken police officer who shot and killed a citizen. The power of dismissal called for an exercise of discretion which we held reviewable. But judicial review of that discretionary determination would not appear to pose a threat to the efficient administration of a police department, nor call into question the type of basic policy decisions warranting immunization. In the Schuster case, plaintiff's intestate supplied information to the Police Department of the City of New York leading to the arrest of a notorious criminal. Subsequent threats upon the informer's life were communicated to the *287 police. Three weeks later, he was shot and killed. This court held that the public owes a special duty to use reasonable care to protect persons who have co-operated in the arrest or prosecution of criminals once it appears that they are in danger due to their collaboration. While it is true that a discretionary policy decision was involved  concerning the advisability and feasibility of providing security for the informer  and reviewed by this court, Schuster stands alone on its own facts and involves a special exception to traditional considerations of municipal tort liability. (See Riss v. City of New York, 22 N Y 2d 579, 583.)
For the reason stated, I would affirm the order of the Appellate Division.
Order modified, without costs, and case remitted to Court of Claims for further proceedings in accordance with opinion herein, and, as so modified, order affirmed.
NOTES
[*] A municipality is not liable, however, for an act of positive and designed injury not done with a view to the municipality's service or for the purpose of executing its orders. (Burns v. City of New York, 6 A D 2d 30, 32, 34-35, 36.)