UNITED STATES v. CITY OF NEW YORK.

District Court, S. D. New York.
Aug. 5, 1935.

Martin Conboy, U. S. Atty., of New York City (by Walter H. Schulman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Paul Windels, Corp. Counsel, of New York City (by Matthew J. Troy and Leonard M. Wallstein, Jr., both of New York City, of counsel), for defendant.

GODDARD, District Judge.

This matter comes before the court on a motion made by defendant to set aside a directed verdict in favor of the plaintiff on January 2, 1935, for $18,-600, the amount of cash paid out by the police property clerk of the city of New York in disregard of plaintiff's demand and warrant of distraint. This $18,600 in currency was taken from the person of Arthur Flegenheimer, alias "Dutch Schultz," at the time of his arrest by police officers of the city of New York on June 18, 1931. The suit was brought by the government pursuant to section 1268a, title 26 USCA (see 26 USCA § 1610 (a, b), entitled "Liability in case of failure to surrender property on which levy has been made," and section 115, title 26 USCA (see 26 USCA §§ 1560–1567), providing for a lien by the government on property of a taxpayer.

A trial was had, and at the end of it the proof that the money in question was the property of Flegenheimer was such that the court directed a verdict in favor of the plaintiff, but entertained a motion to set aside the verdict on issues of law as to defendant's liability, and counsel were permitted to file briefs.

This $18,600 in currency was found upon the person of Flegenheimer at the time of his arrest on June 18, 1931, by the police officers of the city of New York and turned over to the property clerk of the city of New York for safekeeping in the name of Arthur Flegenheimer, alias "Dutch Schultz."

On the 23d day of June, 1931, the collector of internal revenue duly assessed the sum of $79,236.72 against Flegenheimer for federal income taxes for the year 1930 with interest and penalties. On the same day the collector of internal revenue of the Third District of New York filed with the clerk of the United States District Court, this district, a notice of the tax lien setting forth the name of the taxpayer as Arthur Flegenheimer, alias "Dutch Schultz," and the amount of income tax assessed against him for the year 1930; also on the same day, a deputy collector served on the police department, and more particularly upon the property clerk of the police department of the city of New York, a copy of this notice. On August 18, 1931, a deputy collector served upon the police commissioner of the city of New York, and also upon the property clerk of the city of New York, a written demand for payment over to the collector of the sum of $79,236.72 or any funds of lesser amount belonging to Flegenheimer in the custody of the police department of the city of New York. With such demand there was also served a copy of a warrant of distraint on the property of Flegenheimer. Thereafter, from time to time, oral demands were made by representatives of the collector upon the property clerk for the turning over of the $18,600 taken from Flegenheimer Notwithstanding these notices and demands, the police property clerk, for reasons best known to himself, declined to turn the money over to the collector and handed it back to Flegenheimer.

The defendant, the city of New York, contends that it is not liable for the acts of the property clerk, because:

(1) The doctrine of respondeat superior does not apply to a governmental function performed by a police official;

(2) That the government's remedy is against the property clerk alone;

(3) That no proper demand was made upon the defendant under section 1114, subdivision (e), of the Revenue Act of 1926 (26 USCA § 1268a; see 26 USCA § 1610 (a, b); also because of the failure to serve process upon the mayor, comptroller, or the corporation counsel.

[1] Counsel for the plaintiff urges that the contention that the police commissioner and the property clerk were not acting in the course of their duties as city employees, is a mere fiction of local law, not applicable to the liability imposed by section 1268a (see 26 USCA § 1610 (a, b), and contends that the doctrine of respondeat superior does apply; also, that the defendant had adequate notice of

plaintiff's demand under the provisions of section 1268a (see 26 USCA § 1610 (a, b).[1]

The liability imposed by section 1268a (see 26 USCA § 1610 (a, b) is imposed directly on defendant, and it, as a corporate entity, can act only through its agents and servants.

There is no doubt that the police property clerk and that the police commissioner were employees of the city of New York and that the relation of master and servant existed between the city of New York and them. This is apparent from the following facts:

The city of New York is a municipal corporation (Greater New York Charter (Laws 1901, c. 466), § 1). "For all purposes the local administration and government of the people and property within the territory hereby comprised within the City of New York shall be in and be exercised by the corporation aforesaid." Section 4. The chief executive officer of the city of New York is the mayor. The head of the police department is the police commissioner, who is appointed by the mayor. Section 270, as amended by Laws N. Y. 1915, c. 164, and Loc. Laws N. Y. 1931, p. 104. The property of the police department vests in the city of New York. Section 275. The police commissioner has the power to appoint and remove members of the police force, clerks, employees, etc. Section 283. The comptroller of the city of New York pays all salaries and wages to officers and members of the police department. Section 297, as amended by Laws 1917, c. 380, and Laws 1933, Ex. Sess., c. 829, § 3. The police commissioner has the power to employ a "property clerk" to take charge of all property taken from the person of a pris-

oner, and property so taken shall be described and registered by the property clerk in a book kept for that purpose. Section 331, as amended by Laws 1917, c. 400. When a person has been arrested and brought before a magistrate charged with obtaining feloniously property or money, the magistrate may order the property or money to be returned to the accused if he is satisfied from the evidence that the arrested person is innocent of the offence alleged. Section 332. If the accused person is held for trial or examination, the property or money shall remain in the custody of the property clerk until the discharge or conviction, if any claim is made to the ownership of said property or money by a person other than the accused. Section 333. Property stolen or embezzled not claimed by the owner before the expiration of the six months after acquittal or conviction of the person stealing or embezzling it is to be delivered to the property clerk, who shall retain it for a period of six months, after which, if there is no lawful claimant thereto, it shall be paid into the police pension fund. Section 335, as amended by Laws 1920, c. 734.

Under the General City Law of the State of New York (Consol. Laws, c. 21), art. 2-A, §§ 19 to 24, inclusive, every city of New York State is granted various powers, among which is the power to maintain order and enforce the laws, protect property, and care for the general welfare of the inhabitants of the city and visitors thereto (General City Law, art. 2-A, § 20, subd. 13), the power to determine and regulate the number, mode of selection, powers, duties, and compensation of all employees of the city and the relation of all officers and employees of the city to each other, to

---

[1] Section 1268a (see 26 USCA § 1610 (a, b). "Liability in case of failure to surrender property on which levy has been made. Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process. Any person who fails or refuses to so surrender any of such property or rights shall be liable in

his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interests from the date of such levy. (Feb. 26, 1926, c. 27, § 1114(e), 44 Stat. 116.)"

Section 1262, title 26 USCA (see 26 USCA § 1696) states that unless otherwise specifically provided the term "person" means an individual, a trust or estate, a partnership or a corporation.

the city and to the inhabitants of the city (section 20, subd. 17), and the power to provide and administer funds for pensions and annuities for city officers and employees upon retirement (section 20, subd. 20).

The facts in respect to appointments, duties, removals, etc., of police officers, including the property clerk, are quite similar or analogous to those respecting the firemen in charge of the fire boat in the case of Workman v. City of New York, 179 U. S. 552, page 565, 21 S. Ct. 212, 217, 45 L. Ed. 314,[2] in which the Supreme Court said: "That, upon such a state of things, the relation of master and servant existed between the city of New York and those in charge of the fire-boat is clear. And that under the general maritime law, where the relation of master and servant exists, an owner of an offending vessel committing a maritime tort is responsible, under the rule of respondeat superior, is elementary."

In the Workman Case it was held that, where the relationship of master and servant actually existed, as it did between the city of New York and members of its fire department, the local law, if it conflicted with the general maritime law, must yield to the general maritime law, and that the public nature of the service upon which a vessel is engaged at the time of the commission of a maritime tort affords no immunity from liability in a court of admiralty, where the court has jurisdiction. The court went on to say, 179 U. S. 552, at pages 558, 559, and 574, 21 S. Ct. 212, 214, 45 L. Ed. 314:

"And the principle by which the maritime law would be thus in part practically destroyed would besides apply to other subjects specially confided by the Constitution to the Federal government. Thus, if the local law may control the maritime law, it must also govern in the decision of cases arising under the patent, copyright, and commerce clauses of the Constitution. It would result that a municipal corporation, in the exercise of administrative powers which the state law determines to be governmental, could with impunity violate the patent and copyright laws of the United States or the regulations enacted by Congress under the commerce clause of the Constitution, such as those concerning the enrollment and licensing of vessels. * * *

"And although this opinion is confined to the controlling effect of the admiralty law, we do not intend to intimate the belief that the common law which benignly above all considers the rights of the individual, yet gives its sanction to a principle which denies the duty of courts to protect the rights of the individual in a case where they have jurisdiction to do so."

It is true that in suits brought by private parties the New York courts have held that a policeman in carrying out his official duties is performing a governmental function; that the relationship of principal and agent does not exist and the doctrine of respondeat superior does not apply; and that the city, which employs him, is immune from liability for his acts. Maxmilian v. The Mayor, 62 N. Y. 160, 20 Am. Rep. 468; Augustine v. Town of Brant, 249 N. Y. 198, 163 N. E. 732. But no case has been cited by counsel, nor have I found any case, where this doctrine has been applied except in private actions against a municipality. The legal fiction that the doctrine of respondeat superior does not apply to a governmental function performed by a police official seems to have grown up as a result of a desire to protect municipalities from multifarious tort claims by private litigants.

In Evans v. Berry, 262 N. Y. 61, pages 67, 68, 186 N. E. 203, 205, Chief Judge Pound said:

"At common law cities were not liable for the torts of police officers. Although appointed and paid by the city, such officers were not regarded as municipal agents or servants. When acting in the course of their duty, they were said to be performing a governmental function. The city was immune from liability because the doctrine of respondeat superior was held to be inapplicable.

---

[2] In the Workman Case a fire boat owned by the city of New York struck and injured another vessel as the fire boat was entering into a slip in the East River for the purpose of helping to put out a fire in a warehouse on the dock. The District Court, 63 F. 298, held the city liable and awarded damages to the owner of the injured vessel. This was reversed by the Circuit Court of Appeals, 67 F. 347, and the Supreme Court reversed the Circuit Court of Appeals.

This was a rudimentary survival of the maxim, 'The King can do no wrong.' * * *

"As was noted in Augustine v. Town of Brant, supra, page 205 of 249 N. Y., 163 N. E. 732, the modern tendency is against the rule of non-liability of municipalities for the acts of firemen and policemen employed by them. The fiction that they are not acting in the course of their duties as city employees is no longer regarded as a part of the fundamental law."

Chief Judge Pound's opinion contains a strong intimation that, at least, the doctrine of nonliability of municipal corporations in the state of New York will not be extended further. Municipal corporations are liable for the infringement of a patent by its employees and this is a tort. City of Akron v. Bone, 221 F. 944 (C. C. A. 6), and cases there cited. A municipal corporation holding a voluntary charter, as a city or village, is responsible for its mere negligence in the care and management of its streets. In this respect there is a distinction between the liability of such a corporation and that of a quasi corporation, like a county, town, or district. The liability of the former is greater than that of the latter. Barnes v. District of Columbia, 91 U. S. 540, 23 L. Ed. 440.

If the case at bar is regarded as an invasion of the property rights of the government, the doctrine of respondeat superior applies. McQuillin, Municipal Corporations (2d Ed.) vol. 6, § 2793. It is to be noted that under section 115 of 26 USCA (see 26 USCA §§ 1560–1567), a lien had attached to the property in question.

■ I am not inclined to extend the rule of immunity so far that it conflicts with and renders ineffective the ordinary operation of a federal statute for the collection of taxes. It is hardly open to doubt that the Congress intended, and that 26 USCA § 1268a (see 26 USCA § 1610 (a, b) means, that the usual rule of respondeat superior shall apply. Any reasonable system for the collection of taxes may be provided by the Congress. Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184. And it rests with the Congress to determine what means shall be adopted to prevent fraud or evasion in the collection of the revenue of the United States. United States v. One

Hundred Thirty-Two Packages of Liquors (C. C. A.) 76 F. 364.

In Florida v. Mellon, 273 U. S. 12, page 17, 47 S. Ct. 265, 266, 71 L. Ed. 511, where it was contended that a federal tax statute interfered with the exercise by the state of its powers of taxation, the court, referring to the federal act, said: "The act is a law of the United States, made in pursuance of the Constitution, and therefore the supreme law of the land, the Constitution or laws of the states to the contrary notwithstanding." The principle is further illustrated by the Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.), 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44.

That the city of New York is not without power to recognize and satisfy this claim of the government must be conceded, for in Evans v. Berry, 262 N. Y. 61, 186 N. E. 203, it was held that the city of New York might pass a local law enabling the board of estimate and apportionment to make an award to an innocent bystander injured by a police officer with or without fault on his part while engaged in his governmental duty of making an arrest. In view of the city's power to assume such liability of its own volition, it seems unreasonable that a legal fiction should be permitted to defeat the plaintiff's recovery of taxes and to nullify the provisions of section 1268a, 26 USCA (see 26 USCA § 1610 (a, b).

For the foregoing reasons I think the verdict should be sustained.

■ The defendant claims that section 263 of the Greater New York Charter relative to the service of process has not been complied with. However, that section obviously relates only to the service of process for the commencement of actions and legal proceedings in court against the city of New York.

■ In so far as the notice required in section 1268a (see 26 USCA § 1610 (a, b) is concerned, the defendant has had adequate notice of plaintiff's demands through the police department. In Dunstan v. City of New York, 91 App. Div. 355, 86 N. Y. S. 562, it was held that written notice to the department of water supply of the city of New York complaining about a defective hydrant was sufficient notice to charge the city

with negligence, upon which it was held liable for damages. See, also, Gamewell Fire-Alarm Tel. Co. v. The Mayor, etc. (C. C.) 31 F. 312.

The motion to set aside the verdict is denied.