### UNITED STATES v. FIRST CAPITAL NAT. BANK OF IOWA CITY, IOWA, et al.

No. 915.

District Court, S. D. Iowa, Central Division.

Jan. 17, 1936.

M. H. Eustace, Sp. Asst. to Atty. Gen., and C. I. Level, Asst. U. S. Atty., of Denison, Iowa (Frank J. Wideman, Asst. Atty. Gen., Andrew D. Sharpe, M. H. Eustace and C. Stanley Titus, Jr., Sp. Assts. to Atty. Gen., and Edwin G. Moon, U. S. Atty., of Ottumwa, Iowa, on the brief), for the United States.

Lehan T. Ryan, Asst. Atty. Gen., of Iowa (Edward L. O'Connor, Atty. Gen., of Iowa, on the brief), for defendants.

DEWEY, District Judge.

This is a suit brought by the United States of America against the First Capital

National Bank of Iowa City, Iowa, and two of its executive officers, wherein the government asks for judgment in an amount of $4,552.69, with interest and costs, by reason of the failure and refusal of the defendants to surrender to the collector of internal revenue for the collection district of Iowa on demand money on deposit in the defendant bank.

The collector of internal revenue of Iowa upon investigation determined that for the months of September, October, November, and December, 1932, the Board in Control of Athletics of the State University of Iowa, Incorporated, was indebted to the government in the amount of $3,985.50 for federal taxes, and duly levied an assessment in that amount against this board, hereinafter mentioned also as the athletic association. The said board having refused to pay the tax on demand and after filing for record a notice of a tax lien on all the property of the athletic association, the collector of internal revenue issued his warrant for distraint and on October 21, 1933, levied upon a bank deposit in the defendant bank to the credit of said athletic association.

At the time of the levy there was on deposit in the said account to the credit of said athletic association a balance of $21,356.70.

The claim of the government for taxes arose out of a tax on admission tickets to athletic events which money had been collected by said athletic association in the above amount and which at the time of the levy was commingled with said balance in the possession of the defendant bank.

This suit was instituted on February 23, 1935, by virtue and under the authority of section 1114, subsections (e) and (f), of the Revenue Act of 1926 (26 U.S.C.A. § 1610), providing as follows:

"(e) Any person in possession of property, or rights to property, *subject to distraint,* upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property or rights to such collector or deputy, unless such property or right is, at the time of such demand, subject to an attachment or execution under any judicial process. Any person who fails or refuses to so surrender any of such property or rights shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the

amount of the taxes (including penalties and interest) for the collection of which such levy has been made, together with costs and interest from the date of such levy.

"(f) The term 'person' as used in this section includes an officer or employee of a corporation or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs."

The petition recites the preliminary actions of the collector of internal revenue as above and claims that at the time of the levy there was in the possession of the defendant bank property rights belonging to the Board in Control of Athletics of the State University of Iowa, Inc., subject to distraint, and that, although notice had been given to said association, and the procedure duly had with reference to the levy and all notices required by statute of the United States government given, the defendants had refused to turn over the money to the United States and were liable to it in the above amounts.

The defendants answering the claims of the petition of the plaintiff deny for several reasons that the property sought to be distrained by the collector of internal revenue was subject to distraint.

Although many questions are presented, the question to be determined by this court is whether the money levied upon and in the hands of the defendant bank was subject to distraint. The government contends that it was so subject to distraint as the athletic association was at the time the tax accrued and at the time of the levy engaged in conducting intercollegiate football games on which an admission fee was charged and a federal tax was due and collected, and that in so doing it was not acting in a governmental function, but for a public purpose and use, and was acting in the same capacity as a private corporation and subject to have its property distrained for the collection of the tax. The defendants, on the other hand, claim that the fund in the hands of the defendant bank was not only money which had been collected in the carrying on of a governmental function, but also that the money was in truth and in fact the money and property of the State of Iowa.

■ The government by a motion to strike and in this proceeding claims that under the statutes of the United States the defendants cannot refuse to turn over the money to it on the ground that the property levied upon was not subject to distraint. The five cases which have construed section 1114 and cited by the government are as follows: United States v. Bank of Shelby (C.C.A.) 68 F.(2d) 538; United States v. American Exchange Irving Trust Co. et al. (D.C.) 43 F.(2d) 829; United States v. Bank of United States et al. (D.C.) 5 F.Supp. 942; United States v. Midtown Bank of New York (D.C.) 6 F.Supp. 931; U. S. v. City of New York (D.C.) 12 F.Supp. 169. The first four of these cases clearly determine that where the suit is brought against third persons they do not stand in the shoes of the taxpayer and are not permitted to set up defenses ordinarily available to taxpayers in actions brought against them to recover taxes; that section 1114, supra, cannot be broadened to include other defenses not permitted by the statute itself; but that a bank upon which a distraint has been made of property claimed to belong to a third person can set up as a defense that the property was not subject to levy. The case of the United States v. City of New York, 12 F.Supp. 169, does not determine any questions involved in this suit.

■ Plaintiff having definitely alleged, according to the terms of section 1114, that the property was subject to distraint, and the defendants having denied this, it seems to me that this question is not only directly in issue and can be determined in this suit, but that the burden of proof is on the government to establish that the fund levied upon was in fact subject to distraint.

■ This limitation by the statutes as to what may be determined in a suit of this nature does not require a decision of the question whether the government has a right to tax admissions to athletic activities carried on by a state university. If the parties care to have that question determined by the courts, the state university should turn the tax money in the hands of the bank over to the government and then any taxpayer could bring suit against the government and have the benefits of the courts of the United States in determining questions with reference to such a tax on admission tickets to athletic games of state universities; but under the above statutes this cannot be done in this proceeding.

■■ The evidence establishes that during the months above referred to the Board in

Control of Athletics of the State University of Iowa, Inc., or the State University of Iowa itself, did collect taxes for and on behalf of the federal government. That such taxes so collected were paid into this bank account in the hands of the defendants and carried on the books of the university as a separate fund until the question of the liability of the payment of this amount to the government could be determined.

The question as to whether or not the property levied upon was subject to distraint is almost entirely a question of fact. The State University of Iowa is under the direct control of the Board of Education of the State, which governs the educational institutions of the state. Under the statutes of the state it has authority to manage and control the property, both real and personal, belonging to the state institutions and to direct expenditures of all appropriations made to the state institutions and all other moneys belonging thereto. The treasurer of each state institution is authorized by the laws of the state to receive all appropriations made by the General Assembly to said institution and all other funds from all other sources belonging to said institution.

The Legislature of the State makes annual appropriations for carrying on the activities of the State University of Iowa, and these funds are at monthly or other stated periods paid over to the treasurer of said institution. Subject to the general control of said board of education, the money is handled under the direction of the comptroller of the State University. Mr. W. H. Cobb was a witness on the trial. He is and was in 1932 comptroller of the university, and since June, 1933, treasurer of the Board in Control of Athletics. His predecessor as treasurer, Mr. Bates, was in the fall of 1932 unable to look after the business of the athletic board and this was done for him by Mr. Cobb.

In the educational courses of the State University are students who seek an education in the teacher's training course to become a coach or teacher of physical education, and each is supposed to register for these active courses of the competitive type, like wrestling, boxing, swimming, football, basketball, track, baseball, and activities of that type, for which the student receives regular university or academic credit. The department of physical education through the Board in Control of Athletics has control of all athletic events and the education-

al features connected therewith and all matters touching the interests of the student concerning athletic affairs. While it does not pay all of the coach's salary, it does pay the same in part, and it pays in whole or in part the salaries of the professors in that department. It also carries a large staff of officers employed by the State University who receive their pay in part from the returns of athletic events.

The Board in Control of Athletics at the State University functioned for many years without incorporation. It was composed of one professor from each department of the university and two from the alumni. It was some time prior to the matters growing out of the controversy in this suit incorporated as a corporation not for pecuniary profit under the laws of the state of Iowa. It does not appear from the evidence that any of the officers receive any salary for their actions on the board as such, and the evidence does establish that it was incorporated for and functions as an integral part of the activities of the State University of Iowa.

Mr. Cobb, the comptroller of the State University of Iowa, testified as to the mechanics of the handling of funds of the university. Prior to any appropriation by the Legislature of the State to the university, a budget is set up and estimates of the amount of expenditures made for the fiscal year. In making up that budget an estimate is made of the revenue that might be obtained from the carrying on of athletic events by the university. That in the conduct of athletic games the manager of the Board in Control of Athletics collects the receipts and deposits them in the defendant bank. The deposit slip shows in general the source from which the funds were received. This deposit slip is then left with the comptroller of the university and the general management and control of that fund is then exercised by such comptroller; that is, no funds can be paid out without action of the athletic association by and with the consent and approval of the comptroller and under a general limitation of control by the State Board of Education.

The evidence establishes that after the collection of the tax on the admission fees during the months complained of, money was placed in the bank account of the said athletic association, and it appearing to the comptroller of the university that there was some dispute as to where the money should

be paid, he has carried it on his books as a special account in the amount of the tax collected. From this claim is made that the account distrained upon, at least in a sum in the amount of the tax, was money belonging to the United States and not the property in any sense of the State University of Iowa. It is true that a part of this fund was collected for and on behalf of the government of the United States, but the fund itself had not been segregated from other property of the State University of Iowa, and until this was done it could not be considered in law as the property of the United States government. A good illustration of this arises from the cases cited by the defendants where money thus collected by a third party for and on behalf of the government is embezzled. It has been held under similar situations that, had the money in this bank account been stolen or embezzled, a criminal action could not be maintained on the ground that such money was the property of the United States government unless and until it had been set off to it in a separate fund and held as property of the United States.

Distraint or levying on funds belonging to a state or in the hands of·an instrumentality of the state is against public policy for the same reasons that a suit cannot be maintained against a sovereign state. Julander & Julander v. Reynolds, 206 Iowa, 1115, 221 N.W. 807.

From this outline and from the evidence supporting it in detail, the court could not do otherwise than to find that the money in the defendant bank, whether in the name of the athletic association as incorporated or in the name of the athletic association not incorporated, is a fund belonging to the State University of Iowa, and that the said athletic association, whether incorporated or otherwise, is a mere arm or instrumentality of the State University carrying on its activities and that its funds are the funds of the State University.

At the close of the evidence each side moved for a directed verdict, and under the law and the facts, the court finds that plaintiff's motion should be and the same is overruled, and plaintiff excepts; and that the defendants' motion, in so far as it moves for a directed verdict on the ground that the government has failed to establish that the funds in the hands of the defendant bank, were subject to distraint, is sustained, and both parties except.