## UNITED STATES v. FIRST CAPITAL NAT. BANK OF IOWA CITY, IOWA, et al.

### No. 10729.

Circuit Court of Appeals, Eighth Circuit.

March 31, 1937.

M. H. Eustace, Sp. Asst. to Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., Sewall Key and C. Stanley Titus, Jr., Sp. Assts. to Atty. Gen., Edwin G. Moon, U. S. Atty., of Des Moines, Iowa, and C. I. Level, Asst. U. S. Atty., of Denison, Iowa, on the brief), for appellant.

Edward L. O'Connor, Atty. Gen., of Iowa, and Clarence M. Updegraff, of Iowa City, Iowa (Lehan T. Ryan, Asst. Atty. Gen., of Iowa, on the brief), for appellees.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment in an action at law by the United States against the First Capital National Bank of Iowa City and two of its officers to recover a money judgment by reason of the failure and refusal of the defendants to surrender to the collector of internal revenue a credit arising from money deposited in the defendant bank by the board in control of athletics of the state University of Iowa, Inc. (hereinafter called "the board in control"), to its own credit.

The action was brought by virtue and under authority of section 1114 (e) (f) of the Revenue Act of 1926 (title 26, § 1610, U.S.C. [26 U.S.C.A. § 1610]). It is not an action against a taxpayer for the collection of a tax, but is a proceeding to enforce a statutory liability under the statute cited. The statute contains the following provision:

"Section 1114. * * * (e) Any person in possession of property, or rights to property, subject to distraint, upon which a levy has been made, shall, upon demand by the collector or deputy collector making such levy, surrender such property."

The record shows, and the trial court found, that the preliminary steps were properly taken by the Commissioner and the Collector of Internal Revenue such as making the assessment, serving and filing a notice of tax lien, issuing and serving the warrant for distraint, and levy upon the credit standing upon the books of the bank in the name of said board in control.

Various defenses were set up, but the one which was adopted by the court is that the property levied upon was not subject to distraint, but that it at all times was the property of the University of the state of Iowa, and as such not subject to levy. We shall assume, without deciding, that the words "subject to distraint" permit inquiry as to the ownership of the property levied upon, as well as to the kind of property levied upon.

Many of the facts are undisputed.

The date of the levy under the warrant for distraint was October 21, 1933.

It appeared that during the months of September, October, November, and December, 1932, football games were held at the University of Iowa, which were participated in by the students of that University and of other Universities. Tickets of admission were sold by the board in control, and in addition to the admission price, there was collected from each purchaser the federal tax imposed by section 500 (a) of the Revenue Act of 1926, as amended by section 711 of the Revenue Act of 1932 (26

U.S.C.A. § 940 and note).[1] This admission money and the federal tax money, together with .other moneys collected by the board in control, were deposited in the defendant bank, and a copy of the deposit slip was handed by the board in control to the comptroller of the University. It may be noted in passing that this is not the usual way of transferring the right to bank deposits.

The account in the bank in which the money was deposited was designated: "Board in control of athletics"; and checks against the account were signed: "Board in Control of Athletics, Inc.," authenticated by the signatures of two of its officers.

It appears that after some of the money had been collected including the tax, there arose a question in the minds of the board in control as to whether the government was entitled to the tax collected; and the said board directed the comptroller of the University to establish a reserve for the amount of the tax, and this was established on the books of the University and was carried as such. Such amount of reserve was part of the amount on deposit in the defendant bank to the credit of the board in control.

Demand was duly made by the collector of internal revenue upon the defendants for the federal tax collected, but this, by authority of the officers of the state of Iowa, was refused by the defendants. Suit followed.

The case was triable by a jury, but a jury was expressly waived by stipulation; and at the close of all the evidence each side submitted findings of fact and conclusions of law to the trial court. The court made findings and conclusions in favor of defendants. The findings in full are set out in the margin.[2]

---

[1] "Sec. 711. *Admissions tax.*

"(a) Paragraph (1) of section 500 (a) of the Revenue Act of 1926, as amended, is amended to read as follows:

"(1) A tax of 1 cent for each 10 cents or fraction thereof of the amount paid for admission to any place, including admission by season ticket or subscription, to be paid by the person paying for such admission; except that in case the amount paid for admission is less than 41 cents, no tax shall be imposed. In the case of persons (except bona fide employees, municipal officers on official business, and children under 12 years of age) admitted free or at reduced rates to any place at a time when and under circumstances under which an admission charge is made to other persons, an equivalent tax shall be collected based on the price so charged to such other persons for the same or similar accommodations, to be paid by the persons so admitted. Amounts paid for admission by season ticket or subscription shall be exempt only if the amount which would be charged to the holder or subscribed for a single admission is less than 41 cents."

[2] "Findings of Fact and Conclusions of Law.

"Findings of Fact.

"1. This is an action at law of a civil nature arising under a law of Congress providing for internal revenue, brought by the United States of America, pursuant to subsections (e) and (f) of Section 1114 of the Revenue Act of 1926; and the Commissioner of Internal Revenue has authorized and sanctions this proceeding. (Plaintiff I)

"2. At all times mentioned in the complaint on file herein the plaintiff, United States of America, was, and now is, a corporation sovereign and body politic. (Plaintiff II)

"3. At all times mentioned in the complaint the defendant, First Capital National Bank of Iowa City, Iowa, was, and now is, a national banking corporation, duly organized, existing and operating under and by virtue of the National Banking Act, of the laws of the United States, with its principal place of business at Iowa City, in the Southern District of Iowa, and during all of said time, has been and now is engaged in the banking business in said city, state and district; and the defendants F. D. Williams and Thos. Farrell were, and now are, Vice-President and Cashier and Assistant Cashier of said defendant bank, and citizens and residents of said Iowa City and of said Southern District of Iowa. (Plaintiff III).

"4. On or about March 2, 1931, there was incorporated, pursuant to the provisions of Chapter 394, Title XIX, of the Code of Iowa, 1931, a corporation, by the name of The Board of Control of Athletics of the State University of Iowa, Inc., whose incorporators and board of directors for the first year were Henning Larson, Rollin M. Perkins, Howard L. Beye, C. C. Williams, R. A. Fenton, H. A. Kuever, C. A. Phillips, Edward H. Lauer, F. G. Higbee, Rush C. Butler, and W. Earl Hall, all except two of whom were either officers of or members of the faculty of the State University of Iowa, and two of whom were representatives of the alumni of the State University of

Appeal is from the judgment.

The vital findings were that the credits levied upon as the property of the board in control were in reality credits belonging to the State University of Iowa and not "subject to distraint"; and that, therefore, they did not come within the purview of section 1114 (e) of the Revenue Act of 1926. (See finding 27, and conclusion 9).

There was a good deal of testimony offered as to the necessity of a physical education as a part of a general education,

Iowa. The officers of said corporation for the first year named in said Articles of Incorporation were:

"C. C. Williams of Iowa City, Iowa, Chairman,

"E. L. Lauer of Iowa City, Iowa, Secretary,

"W. H. Bates of Iowa City, Iowa, Treasurer.
"(Plaintiff IV).

"5. Prior to the incorporation of said The Board in Control of Athletics of the State University of Iowa, Inc., there existed at the State University of Iowa a certain faculty board or committee known as The Board in Control of Athletics, which carried on intercollegiate sports and other athletic sports participated in by students in attendance at the State University of Iowa. At the time of the incorporation of said corporation the members of said faculty board or committee were the same individuals who are described in said Articles of Incorporation as the first board of directors, and the officers of said corporation were either officers of or members of the faculty of said University. (Plaintiff V)

"6. The Articles of Incorporation of said The Board in Control of Athletics of the State University of Iowa, Inc., provide—

"The business and object of this corporation shall be to carry on intercollegiate sports and other athletic activities of the State University of Iowa, to promote athletic interest among the students of said university, and to manage the finances and business incident thereto. (Plaintiff VI)

"7. The Articles of Incorporation of said The Board in Control of Athletics of the State University of Iowa, Inc., further provide—

"Membership of this corporation shall consist of those who may sign these articles of incorporation and their associates or successors, who may hereafter be elected and designated in accordance with the By-Laws of this corporation, but no person shall be or become a member of this corporation unless nominated for membership by the President of the State University of Iowa. (Plaintiff VII)

"8. During the months of September, October, November, and December, 1932, said Board in Control of Athletics of the State University of Iowa, Inc., had control of the athletic games and events in which teams composed of athletes who were students of said University of Iowa competed with teams composed of athletes who were students of other universities and colleges, to which spectators were admitted upon payment of the prescribed admission price plus the amount of admissions tax imposed by Section 500 of the Revenue Act of 1926, as amended by Section 711 of the Revenue Act of 1932. (Plaintiff VIII)

"9. During said months of September, October, November, and December, 1932, athletic games or contests were held or played in and upon the grounds or campus of said University of Iowa, to which the general public was admitted as spectators upon payment of the prescribed admissions price plus the Federal tax. Such admissions price and Federal tax were evidenced by tickets, which tickets were sold, and said admissions charges plus Federal tax were collected by said The Board in Control of Athletics of the State University of Iowa, Inc., through certain of its officers, agents and servants. Each ticket of admission had printed on the face thereof the admission price, the amount of Federal tax, and the total of admission charge and tax. The full amount shown upon the face of each such ticket of admission, being admission price plus tax, was collected from the purchaser of each ticket by said The Board in Control of Athletics of the State University of Iowa, Inc., its officers, agents, and servants. The funds so derived from the sale of tickets to athletic games and events for admission thereto, including the funds collected from purchasers of said tickets as and for the Federal admission tax, were collected and held by said The Board in Control of Athletics of the State University of Iowa, Inc., and by it deposited to its credit in the First Capital National Bank of Iowa City, Iowa, defendant herein, in an account designated as 'Board in Control of Athletics.' (Plaintiff IX)

"10. Neither The Board in Control of Athletics of the State University of Iowa, Inc., nor any one on its behalf, made any returns of taxes so collected and required by law to be collected, to the Collector of Internal Revenue under Section 500 of the Revenue Act of 1926, as amended

and to the effect that these athletic contests were an essential part of the physical education at the University. But as heretofore indicated, and as shown by the findings, the trial court restricted the case to narrower issues.

In its memorandum opinion accompanying the findings, the trial court says (13 F. Supp. 380, 382):

"Although many questions are presented, the question to be determined by this court is whether the money levied upon

by Section 711 of the Revenue Act of 1932. (Plaintiff X)

"11. Upon the failure of said The Board in Control of Athletics of the State University of Iowa, Inc., to make returns and pay the tax on said admissions, the Collector of Internal Revenue for the Collection District of Iowa caused an investigation to be made of the books, records and accounts of said The Board in Control of Athletics of the State University of Iowa, Inc., and on July 31, 1933, determined that for said months of September, October, November, and December, 1932, said The Board in Control of Athletics of the State University of Iowa, Inc., had incurred a liability for admission taxes in the amount of $3,985.50, and an assessment in said amount was thereafter duly made by the Commissioner of Internal Revenue, together with interest thereon at the rate of one per cent. per month as provided by Section 502 (d) of the Revenue Act of 1926 [26 U.S.C.A. § 957] amounting at the date of said assessment to $350.39. (Plaintiff XI)

"12. Upon the assessment of said tax and interest as aforesaid, the said Collector of Internal Revenue demanded payment of said tax and interest of the said The Board in Control of Athletics of the State University of Iowa, Inc., but said The Board in Control of Athletics of the State University of Iowa, Inc., neglected and refused and still neglects and refuses to pay the same or any part thereof, and said tax and interest and the whole thereof remain unpaid. (Plaintiff XII)

"13. The Board in Control of Athletics of the State University of Iowa, Inc., having failed to pay said tax and interest within ten days after demand, the Collector of Internal Revenue added thereto under the provisions of Section 3184 of the Revised Statutes, a penalty of five per cent., amounting to $216.79. (Plaintiff XIII rearranged by the Court)

"14. On September 13, 1933, said Collector of Internal Revenue duly filed for record in the office of the Clerk of the District Court of the United States for the Southern District of Iowa, and also in the office of the Recorder of Johnson County, Iowa, a notice of tax lien on all the property of said The Board in Control of Athletics of the State University of Iowa, Inc., as authorized by Section 3186 of the Revised Statutes, as

amended by Section 613 of the Revenue Act of 1928. (Plaintiff XIV rearranged by the Court)

"15. Upon failure and refusal of the Board in Control of Athletics of the State University of Iowa, Inc., to pay said taxes, the Collector of Internal Revenue for the District of Iowa, issued, or caused the issuance of a warrant for distraint, Number 33280, on October 3, 1933, which he placed, or caused to be placed, in the hands of George Koehn, Deputy Collector of Internal Revenue of said District, for service thereof. (Plaintiff XV rearranged by the Court)

"16. On October 21, 1933, George Koehn, C. E. Doak, and P. E. Garrett, Deputy Collectors of Internal Revenue for the District of Iowa, served said warrant for distraint and levied upon the money, credit, bank deposit and bank account property rights of The Board in Control of Athletics of the State University of Iowa, Inc., in the hands of the defendants, and each of them, and forthwith served notice of levy on bank deposits and demand upon defendants, and each of them. (Plaintiff XVI)

"17. At the time of such levy, demand and service of notice of levy on such money, credit, bank deposit and bank account property rights and demand upon defendants, there was in the hands of the defendants a credit balance to The Board in Control of Athletics of the State University of Iowa, Inc., of $21,356.70, which represented among other revenues proceeds from the sale of admission tickets to athletic events, and included the amounts collected as federal tax on such admissions to athletic events held during the months of September, October, November and December, 1932. (Plaintiff XVII rearranged by the Court)

"18. On December 27, 1934, said Collector of Internal Revenue served, or caused to be served, upon each of the defendants, notice and demand, for surrender, delivery and payment over to him of such money, credit, bank deposit, and bank account property rights of said The Board in Control of Athletics of the State University of Iowa, Inc., in the hands of defendants, and each of them, against which levy was made on October 21, 1933, which defendants, and each of them, refused to surrender. deliver or pay over to said Collector. (Plaintiff XX)

"19. At the time of such levy, demand

and in the hands of the defendant bank was subject to distraint."

And again:

"Plaintiff having definitely alleged, according to the terms of section 1114, that the property was subject to distraint, and the defendants having denied this, it seems to me that this question is not only directly in issue and can be determined in this suit, but that the burden of proof is on the government to establish that the fund levied upon was in fact subject to distraint."

And further:

"It is true that a part of this fund was collected for and on behalf of the govern

and service of notice of levy on bank deposits and demand, the said money, credit, bank deposit and bank account property rights of The Board in Control of Athletics of the State University of Iowa, Inc., in the hands of defendants, and each of them, was not subject to any lien, attachment or execution levied thereon under any judicial process other than such levy made by said Deputy Collector on October 21, 1933. (Plaintiff XXI)

"20. That the legislature of the State of Iowa created the State Board of Education whose members are appointed by the Governor and confirmed by the Senate of the State of Iowa, and whose duties and powers are provided for in Chapter 195 of the Code of Iowa, 1935, and that pursuant to powers given to it by law and to assist in administering the affairs at the State University of Iowa, which is one of the institutions governed by the State Board of Education, it provided for a Board in Control of Athletics, which board is named by the president of the University and is composed of faculty members of the University and alumni. (Defendant IV)

"21. That the State University of Iowa was provided for in the Constitution of the State of Iowa, adopted in 1857 and thereafter, the legislature provided by Chapter 196 of the Code of Iowa, 1935, that the object of the State University of Iowa was to provide the best and most efficient means of imparting to men and women a liberal education and a thorough knowledge of the different branches of literature, in the arts and sciences with their varied applications and that the University shall include colleges of liberal arts, law, medicine and such other colleges and departments, with such courses of instruction and elective studies as the Board of Education may from time to time determine, and further provided that if a teachers' training course is established, it shall include the subject of physical education.

"That such a course was established at the University of Iowa and the Department of Physical Education made a part of the Liberal Arts College and that degrees were offered to those enrolling in the physical education department, and that

as a part of the physical education and as a part of the Department of Physical Education, intercollegiate athletic games were offered and sponsored by the State University of Iowa in the Fall of 1932, during the months of September, October, November and December, being the period in controversy in this action. (Defendant V)

"22. That the full amount of the admission price, including the Government tax collected, was turned over by The Board in Control of · Athletics of the State University of Iowa, Inc., to the treasurer of the State University of Iowa by depositing such proceeds in an account of the said Board in Control of Athletics in ' the First Capital National Bank of Iowa City, Iowa, and turning a copy of the deposit slip over to the comptroller of the State University of Iowa. That there was also deposited in such account during the period complained of certain fees received from students and other items, including deposit on uniforms. That this money was disbursed on orders of the officers and those in charge of the State University of Iowa. (Defendant VIII rearranged by the Court)

"23. That pursuant to the law of the State of Iowa, the 44th General Assembly, meeting in the Spring of 1931, appropriated for the State University of Iowa at Iowa City, Iowa, for the biennium beginning July 1, 1931, the sum of $4,900,000, or so much thereof as may be necessary for salaries, support, maintenance, equipment, general improvements and special capital purposes, and providing further that the unallocated funds be distributed by the State Board of Education. (Defendant XII)

"24. That in determining the appropriation, there was submitted by the University to the legislature, a budget of the various colleges and departments for the biennium and also a schedule or report of anticipated revenues from the various sources such as tuition fees and athletic contests, including these for the months of September, October, November and December, 1932, and in arriving at the amount of money necessary to appropriate from money raised through taxation,

ment of the United States, but the fund itself had not been segregated from other property of the State University of Iowa, and until this was done it could not be considered in law as the property of the United States government."

Finally, the trial court specifically finds (finding 27):

"That the money in the hands of the defendants and each of them and which is attempted to be levied upon and distrained by the plaintiff, and which is sought to be en-

there was deducted this anticipated revenue. (Defendant XIII)

"25. That the proceeds from the athletic contests during the period in controversy were expended for the general purposes of the physical education department, including the payment of salaries and that the coaches of the football teams also served as instructors in the physical education department, and that the students majoring in the physical education department were required to join the Freshman football squad and receive training from the coaches and those eligible, become members of the Varsity football squad at the University, which took part in these athletic games in the Fall of 1932. (Defendant XIV)

"26. The students so majoring in physical education, receive a degree from the University upon completing the required course and are available for teaching work, including physical education and the coaching of athletic teams, and that being a part of the Varsity squad and taking part in these intercollegiate games at the University of Iowa, assists such students in securing teaching positions, as those athletes, with intercollegiate football experience, are much more in demand than those without such experience and reputation. (Defendant XV)

"27. That the money in the hands of the defendants and each of them and which is attempted to be levied upon and distrained by the plaintiff, and which is sought to be enforced in this action, was at all times property and moneys of the State University of Iowa. (Defendant XVIII rearranged by the Court)

"Conclusions of Law.

"1. That under the law and the evidence all notices and demands, required by law to be served, were duly served upon the defendants prior to the institution of this action. (Plaintiff X)

"2. That under the law and the evidence this action is one to enforce a statutory liability imposed by Section 1114 (e) of the Revenue Act of 1926, and is not a proceeding against a taxpayer to enforce a tax liability. (Plaintiff XII)

"3. That under the law and the evidence the legality or validity of a tax cannot be litigated by these defendants in this action. (Plaintiff XIII)

"4. That under the law and the evidence the defenses ordinarily available to taxpayers in actions brought against them to recover taxes cannot be set up or interposed by these defendants in this action. (Plaintiff XIV)

"5. That under the law and the evidence the constitutionality of a taxing act cannot be tested in this action by these defendants. (Plaintiff XVI)

"6. That the plaintiff has failed to sustain the burden of proving a cause of action in its favor against the defendants and each of them. (Defendant II)

"7. That the pleadings and evidence in this case are insufficient in law to sustain a judgment in favor of the plaintiff and against the defendants. (Defendant III)

"8. That the plaintiff has failed to sustain the allegations of its petition. (Defendant IV)

"9. That under the law and the evidence, the funds on deposit in the First Capital National Bank of Iowa City, Iowa, defendant herein, on October 21, 1933, in an account designated Board in Control of Athletics, were not subject to distraint by the Collector of Internal Revenue for Federal taxes which have been assessed against the Board in Control of Athletics of the State University of Iowa, Inc., for the months of September, October, November and December, 1932. (Defendant VI)

"10. That the plaintiff has bottomed its action upon the provisions of section 1114 (e) of the Revenue Act of 1926, and therefore, must prove that the moneys and properties which the defendants refused to turn over, were subject to distraint and by way of defense to such action, the defendants are entitled to show and prove every reason why the said property and bank account were not subject to distraint. (Defendant XIV)

"11. That the plaintiff, on the pleadings and the evidence in this cause, is not entitled to a judgment in its favor against the defendants or either of them, for the sum of $4,552.68, or any amount, nor is it entitled to a judgment for costs. (Defendant XXII)

"12. That the conduct of the athletic games at the University of Iowa in the Fall of 1932 was an integral part of the program of athletics and physical education which is a part of the work of the state educational institution. (Defendant XXXIII)"

forced in this action, was at all times property and moneys of the State University of Iowa."

And concludes (conclusion 9):

"That under the law and the evidence, the funds on deposit in the First Capital National Bank of Iowa City, Iowa, defendant herein, on October 21, 1933, in an account designated Board in Control of Athletics, were not subject to distraint by the Collector of Internal Revenue for Federal taxes which have been assessed against the Board in Control of Athletics of the State University of Iowa, Inc., for the months of September, October, November and December, 1932."

One of the first questions which arises is: What was the status of the board in control in relation to the United States?

United States v. Johnston, 268 U.S. 220, 45 S.Ct. 496, 69 L.Ed. 925, decided May 11, 1925, holds that the relation of a similar collecting agent to the United States was that of debtor and creditor.

The board in control was, therefore, at least prima facie, indebted to the United States for the tax collected.

The board in control was incorporated in 1931 under the general law of the state of Iowa. Its general purpose was stated in article III of the articles of incorporation:

"The business and object of this corporation shall be to carry on intercollegiate sports and other athletic activities of the State University of Iowa, to promote athletic interest among the students of said university, and to manage the finances and business incident thereto."

The corporation had no stock, and we may assume, though it is not strictly proven, that it was controlled by the State University of Iowa.

The board in control in its work used papers bearing its name with the abbreviation "(Inc.)" following. This was known to the bank to the University authorities, and to the collector of internal revenue of the United States.

The board in control had its own bank account in defendant bank, on which it drew checks which were signed by officers of the said board.

The board in control kept its own accounts and made its own balance sheets. It carried on the business for which it was formed in its own name, including the collection of admissions to athletic contests.

By virtue of the United States Statutes (section 500 (a) of the Revenue Act of 1926, as amended by section 711 of the Revenue Act of 1932, 26 U.S.C.A. § 940 and note; and section 502 of the Revenue Act of 1926, 26 U.S.C.A. §§ 955 (b, c, d), 956, 957), the board in control undertook to collect and did collect the federal tax on such admissions. It was the duty of the board in control to account for the money collected (see section 502 [a] [c] [d], 26 U.S.C.A. §§ 955 (b, c) 956, 957).

The University fiscal authorities knew that the board in control was acting as collecting agent for the federal tax, and acquiesced in this activity.

The federal tax so collected was deposited by the board in control in defendant bank, and in making said deposit, said board mingled the federal tax with the moneys collected for admissions.

Demand by the collector of internal revenue on the board in control for the federal tax collected was unavailing.

Thereafter, the usual and regular proceedings, including demand upon the defendant bank, were had, which also proved unavailing. These notices and demands required by law to be served were duly served upon defendants herein. The trial court so found.

Suit followed against the bank and its officers under section 1114 (e) of the Revenue Act of 1926.

It seems obvious that the board in control was qualified to act as collecting agent of the United States to collect the federal tax in question, and did so act. Relative to this matter the trial court, in its memorandum opinion, used the following language:

"It is true that a part of this fund [admission tax] was collected for and on behalf of the government of the United States."

But the trial court was of the opinion that because a segregation had not been made, the federal tax money could not be the property of the United States; and the trial court was also of the opinion that because the board in control was an agency of the State University, any funds in the hands of the board in control belonged to that University.

We cannot agree with the latter part of this conclusion of the trial court.

Whatever the relation which existed between the board in control and the University of the state of Iowa, when the

board in control, with the consent of the University of the state of Iowa, undertook to act and did act as collecting agent for the United States in the collection of the federal admission tax, its relationship with the University of the state of Iowa with respect to the federal tax collected became of secondary importance. It was governed, while so acting for the United States, by the statutes of the United States and the regulations issued thereunder. The bank under the circumstances existing in the instant case was certainly in no position to assert that the tax moneys so collected by the board were funds belonging to the University of the state of Iowa.

It may be noted at this point that the deposit in the bank, according to the finding of the trial court, belonged to the University of the state of Iowa; but according to the appellees' counsel, belonged to the state of Iowa. It stood in the name of neither on the books of the bank.

If segregation of tax moneys collected and deposited by the board from other moneys collected and deposited by it were necessary, attention is called to the fact that such had already been made by the University authorities on their books.

It should also be noted that the demand made upon the bank and its officers did not cover the whole amount to the credit of the board in control, but simply extended to the amount of the federal tax with interest and penalty accruing by reason of the nonpayment of the tax.

There was standing to the credit of the board in control at the bank more than sufficient to pay the amount demanded.

The State University, having acquiesced in the collection of the admission taxes for the United States by the board in control, may not in this action against the bank assert ownership in itself of the federal taxes so collected.

The trial court has held that the validity of the federal tax cannot be litigated by the defendants in the present action. We are in accord with this holding.

We find in the record no ground upon which can be justified the attempt by indirection to prevent the money collected as a federal tax from being surrendered to the United States. We think that credit arising from its deposit in the bank was subject to distraint as belonging to the Board in Control of Athletics of the State University of Iowa, Inc., which had col-

lected it for the United States. The paying over by the bank to the United States of the tax moneys collected by the board for it will not deprive the University of Iowa of any funds or assets collected by the board for the University.

We think also that the special defenses available under section 1114 (e) of the Revenue Act of 1926 were not proven.

The judgment is reversed and a new trial granted.