## COMMONWEALTH BANK et al. v. UNITED STATES.

No. 8312.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1940.

Charles F. Meyler and Leo F. Covey, both of Detroit, Mich., for appellants.

Leon F. Cooper, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Leon F. Cooper, Sp. Assts. to Atty. Gen., and John C. Lehr and J.

Thomas Smith, both of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The suit was brought by the United States to enforce liability against the appellant bank and two of its officers, for failure to surrender property or property rights alleged to be in the possession of the bank, belonging to a delinquent taxpayer, and subject to distraint under § 1114(e) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 325. The bank defended upon the ground that it possessed no property of the taxpayer and if so had rights therein superior to the claims of the government, and with its codefendants appeals from a judgment in favor of the United States.

The delinquent taxpayer is John J. Hoefle (see Hoefle v. Commissioner, 6 Cir., 114 F.2d. 713, decided September 16, 1940), who for several years carried a substantial commercial checking account with the bank. On October 31, 1933, affidavits were served upon the bank, sworn to by Wm. C. Rands, of Detroit, setting forth that his name, and the name of a corporation of which he was president, had been forged upon dividend checks issued by various corporations in which Rands, or Rands, Inc., was the payee, aggregating upwards of $30,000, and demanding payment from the bank, and all other responsible parties, for the amount of the checks. Photostatic copies of the allegedly forged checks, filed with the affidavits, disclosed that they were endorsed in the name of the payee, followed by the name "John J. Hoefle." An investigation made by the bank showed that the checks had been deposited by Hoefle, credited to his account, and the proceeds paid out upon his signature. The deposited checks had been collected from drawee banks, through various other banks and clearing houses. At the time of the investigation, Hoefle had a balance in his checking account of $552.64, but on the 26th of October, he had deposited an additional sum of $10,310.73, against which cashier's checks in like amount, payable to the Collector of Internal Revenue at Detroit, had been delivered to him. Inquiry at the Collector's office brought the information that the cashier's checks had not been delivered to the Collector, and there was no record there of any sum owing by Hoefle for taxes.

On November 2, Hoefle returned the cashier's checks to the bank with the request that they be canceled and new checks, in the same aggregate amount, issued, one of them payable to Hoefle himself, and others to the Collector, whereupon the bank informed Hoefle of Rands' claim of forgery and advised him that all his funds would be held by the bank as an off-set against his liability to it.

On the 10th of November, Hoefle presented at the bank a general assignment of all his right to money on deposit, and all other property in the possession of the bank, to one Schaeffer. He was advised that the assignment would not be honored until the bank's liabilities, arising out of Hoefle's deposits, had been determined and satisfied. On December 11th, the Collector at Detroit made a demand upon Hoefle for the payment of delinquent taxes in excess of $50,000, in pursuance of certificates of assessment received from Washington. Contemporaneously the Collector filed with the Register of Deeds for Wayne County, Michigan, and with the Clerk of the United States District Court for the Eastern District of Michigan, notice of a tax lien claimed by the government, against all property and property rights belonging to Hoefle. Warrants of distraint followed on December 21, 1933, and a notice of levy, together with copies of the distraint warrants and lien notice, was served upon the bank together with a demand that it surrender all money, property, and property rights belonging to Hoefle. The bank refused, advising the Collector of the possibility that it might be held liable for alleged forgeries of checks deposited by Hoefle, and that no funds belonging to him would be surrendered until its liability had been determined.

The government began its action on February 6, 1936. In the meantime, numerous claims had been filed against the bank by banks which had endorsed the allegedly forged checks in process of collection, and Rands had brought suits against the drawers of the checks, including one against a Canadian Corporation, in the Supreme Court of Ontario. All of the defendants called upon the bank to defend. Conceiving that liability would be asserted against it in the event that Rands should prevail, the bank undertook defense and expended substantial sums in investigation, retainer of attorneys, and preparation for trial. The first case to reach trial was that in

Ontario, where the bank successfully defended on a by-law of the dividend-paying corporation, which constituted the issuance and mailing of a dividend check payment of its dividend obligation. The Ontario judgment, with other circumstances, led to a settlement between Rands, Hoefle, and the appellant bank, whereby the liability of each of the parties, growing out of the alleged forgeries, was discharged. The settlement was consummated in May, 1937, and by it the bank's loss first became fixed and determinable.

Schaeffer was permitted to intervene in the proceedings below, to plead his assignment of Hoefle's claim against the bank, and to pray for judgment against it. The bank responded with a denial of the intervener's rights under the assignment. Upon trial, appellants and appellee offered to waive a jury, but the intervener declined. At the close of all the proofs, the court, of its own motion and over the objections of all parties, dismissed the intervener from the proceeding, and, acting upon the earlier waiver of the remaining parties, dismissed the jury, took the cause under advisement, and later, upon announcing findings of fact and conclusions of law, entered judgment for the government for an amount equal to Hoefle's deposit balance including the impounded cashier's checks.

Section 1114(e) of the Revenue Act of 1926, provides that any person in possession of property or rights to property subject to distraint, upon which a levy has been made, shall, upon demand by the Collector, or his deputy, surrender such property or rights unless they were subject to an attachment or execution under judicial process, and that any person who fails to do so shall be liable to the United States in a sum equal to the value of the property or rights not surrendered, up to the amount of the taxes for the collection of which the levy was made.

The first contention of the appellant is that there was no valid levy against Hoefle, because ten days had not elapsed between the date of notice and demand and the levy, and that the levy was, therefore, premature and void. We need give little consideration to this contention since the appellant is not the taxpayer and the latter is not here to complain. United States v. First Capital Nat. Bank, 8 Cir., 89 F. 2d 116; United States v. American Exchange Irving Trust Co., D.C.N.Y., 43 F. 2d 829. Were the controversy one that involved, primarily, priority of liens, inquiry might be made as to their validity, though this we do not decide. There is no issue here, however, of priority. If the bank has a lien upon funds owing by it to Hoefle, its lien is clearly prior to that of the government.

That the appellant has been in doubt as to the legal principle to be invoked against the imposition of the liability asserted by the government, is obvious. At the outset it claimed a lien upon funds ostensibly belonging to Hoefle. Concluding, however, that there were no specific funds in its possession belonging to Hoefle, since the relationship of a bank to its depositor is merely that of a creditor. Keyes v. Paducah & I. R. Co., 6 Cir., 61 F.2d 611, 86 A.L.R. 203, and Hoefle's deposit was not ear-marked, or set apart from other funds of the bank, it sensed anomaly in claiming a lien upon its own funds. It now takes the position that it was not in possession of property or rights of property belonging to the debtor, because its indebtedness to Hoefle had become subject to the terms of an agreement it had made with Hoefle, prior to the levy, whereby the bank acquired the right to indemnify itself for any expense incurred by it as a result of such claims, the consideration for the agreement being the bank's undertaking to defend against them and to pay over to Hoefle any balance remaining, with interest thereon at savings bank rates. This necessitates some amplification of the facts of record.

Appellant's counsel, Meyler, gave evidence that, following Hoefle's first call upon the bank, and before the date of the tax levy, Hoefle had had an interview with him during which an agreement had been reached that the bank might hold any funds to which Hoefle was entitled, as indemnity against any loss or expense which it might incur by reason of the alleged forgeries, and that if Hoefle would assist and cooperate in the defense of claims against the bank, any part of the fund eventually determined to be his would carry savings bank interest, that the bank carried out this agreement, was successful in resisting judgments that ultimately might have imposed a liability upon Hoefle or the bank, and incurred thereby an expense in excess of $7,000. It is this sum which it seeks to set off against any moneys owing to Hoefle.

■ It is undisputed that the bank incurred no liability by reason of its endorsement and collection of the allegedly forged dividend checks. Its claim of right to be compensated for the expense incurred in defending suits, including those to which it was not itself a party, rests entirely upon the oral agreement claimed to have been made with Hoefle. The court below found the terms of the alleged agreement to be vague and uncertain. Meyler's testimony is uncorroborated, and Hoefle was not called by either side as a witness. The court assumed that if he had been, he would have testified adversely to the bank's contention and that there was no such oral agreement. The presumption is unwarranted. Meyler is a practitioner in good standing in this circuit; has been for many years attorney for the bank; and Hoefle's interests were adverse. No inference may be invoked that Meyler's testimony was either deliberately, or, through faulty memory, inaccurate. We have said, upon another occasion, Voltz v. Treadway & Marlatt, 6 Cir., 59 F.2d 643, 644, "While the testimony of interested parties to an alleged parol assignment should undoubtedly be received with some caution, In re Macauley, D.C.Mich., 158 F. 322, yet where such parol assignment is established by testimony which is uncontradicted and credible, by witnesses who are not impeached, and there are no circumstances which cast doubt upon their truthfulness, it will be upheld."

■ But to accept the truth of Mr. Meyler's testimony is not to determine the validity of the alleged parol agreement, or the definiteness of its terms. The court found them vague and uncertain, and so they appear to be. Undoubtedly, what the parties to the agreement had principally in mind, was a possible loss to the bank upon its endorsements. No loss was sustained. There are, moreover, circumstances which indicate that neither Hoefle nor the bank recognized any oral assignment to result from Mr. Meyler's interview with Hoefle. The interview took place on or about November 6 or 8, 1933. Yet within a few days thereafter, Hoefle appeared at the bank with an assignment to Schaeffer, dated November 2, 1933. The bank, in refusing to recognize the assignment, asserted no right to retain the funds under any agreement made between Hoefle and Meyler. It made no entry upon its books indicating that the items were held as an indemnity, or pledge, to secure Hoefle's possible liability to it. Throughout the controversy its ledger sheet, reflecting Hoefle's account, showed a balance of $500, without notation that this sum was retained in pledge of any contingent liability. Likewise, is there no notation upon the cashier's checks impounded, to indicate that they too were held as a pledge for security against loss or expense for defending suits. There is no charge against Hoefle's account for sums expended in litigation or preparation for trial, and it must be presumed that such items were charged to general operating expenses. Nor was there credit to Hoefle for savings bank interest, in accordance with the terms of the agreement. While the bank's defense against litigation, and Hoefle's cooperation with it, is consistent with the terms of the agreement, the circumstances are equally consistent with the purpose of both to protect individual interests. The conclusion is inescapable that the bank either did not authorize or ratify Meyler's agreement with Hoefle, or, having done so, repudiated it, and so also did Hoefle.

■ The Bank's contention that there was error in dismissing Schaeffer as an intervener is of no avail to it. Schaeffer did not appeal and the bank's answer to his intervening petition was a denial of Schaeffer's rights under his assignment. There is ample basis in the record for a conclusion that the assignment was but a subterfuge designed to defeat the claim of the United States. The loan for which it stood as security was, in fact, a withdrawal of Hoefle's own funds from an account carried in the name of Schaeffer, his brother-in-law. Whether the dismissal of the intervening petition is an adjudication of its invalidity, we do not undertake to decide. The court made an order preserving the evidence bearing upon the Schaeffer assignment, in the event that at another time, and in other litigation, its validity might come into question. This was for the protection of the bank.

■ Finally, it must be said that the terms of the statute, under which the tax levy was made, recognize no defense except where there is no property or property right of the taxpayer in the defendant's possession, where the property or right is not subject to distraint, or is subject to an attachment or execution under some judicial process. The proceeding authorized is not an action in rem, nor is it a suit for the collection of a tax. It is a

suit to enforce personal liability for failure to surrender property belonging to a delinquent taxpayer.

The judgment below is affirmed.